(No. 90394.—▮▮▮▮)

# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JAMES H. TENNER, Appellant.

*Opinion filed October 18, 2002.—Modified on denial of rehearing March 31, 2003.*

RARICK, J., took no part.
FREEMAN, J., specially concurring.

Charles M. Schiedel, Deputy Defender, and Kim Robert Fawcett, Assistant Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

James E. Ryan, Attorney General, of Springfield, and Richard A. Devine, State's Attorney, of Chicago (William L. Browers, Assistant Attorney General, of Chicago, and Renee Goldfarb, James E. Fitzgerald and Judy L. DeAngelis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FITZGERALD delivered the opinion of the court:

The defendant, James Tenner, appeals a Cook County circuit court order dismissing his second post-conviction petition without an evidentiary hearing. Because the defendant was sentenced to death, his appeal lies directly to this court. See 134 Ill. 2d R. 651(a).

On January 10, 2003, while the defendant's petition for rehearing was pending, former Governor George Ryan commuted the sentences of all Illinois death row inmates, including the defendant, to life imprisonment without the possibility of parole or mandatory supervised release.

The defendant's appeal primarily concerns his competency at trial and sentencing. This appeal survives the commutation order because fitness would remain an issue regardless of the penalty imposed upon the defendant. For the reasons that follow, we affirm.

## BACKGROUND

The defendant and Albert Sauls worked together in various businesses throughout the 1970s. By the mid-1980s, the defendant and Sauls each operated his own trucking company, sharing a garage in South Chicago Heights. On the evening of September 2, 1987, Sauls and his employee, Alvin Smith, returned to the garage after work and started repairs on one of Sauls' trucks. Sauls' wife, Donna, and the defendant's former girlfriend, Shirley Garza, soon arrived at the garage. Later, as Smith left the garage, he was met outside by the defendant carrying a loaded shotgun. The defendant forced Smith back into the garage and, once inside, ordered Smith, Sauls, and Sauls' wife to lie on the floor. The defendant instructed Garza to tie their wrists and ankles. The defendant then directed everyone to his side of the garage where he had strung three nooses over a beam. He told Garza to place a noose around the necks of Smith, Sauls, and Sauls' wife, and he tied another noose for Garza. With his victims incapacitated, the defendant proceeded to harangue them for more than two hours, complaining that Sauls and his wife had interfered with his relationship with Garza. The defendant released Garza and sent her outside the garage. The defendant then shot Donna Sauls in the head and Smith in the abdomen at point-blank range. Both died. The defendant also shot Albert Sauls in the face; he survived.

In 1990, the defendant was convicted of two counts of first degree murder, one count of attempted first degree murder, four counts of aggravated unlawful restraint, and one count of armed violence; he was sentenced to

death. On direct appeal, we vacated the defendant's attempted first degree murder conviction, affirmed his other convictions, and affirmed his death sentence. See *People v. Tenner*, 157 Ill. 2d 341 (1993). The United States Supreme Court denied the defendant's petition for writ of *certiorari*. See *Tenner v. Illinois*, 512 U.S. 1246, 129 L. Ed. 2d 882, 114 S. Ct. 2768 (1994).

In 1994, the defendant filed his first post-conviction petition, alleging, *inter alia*, that his trial attorneys were ineffective for failing to obtain a psychiatric evaluation of the defendant. The defendant asserted that such an evaluation would have provided evidence to support an insanity defense at trial or a mitigating factor at sentencing. The defendant relied upon a 1994 report from Dr. Lyle Rossiter, Jr., an expert consulted by his post-conviction attorney. Dr. Rossiter's report summarized his opinions "regarding the question of whether there is a significant likelihood that James Tenner was suffering from a state of mental and emotional distress at the time of his September 2, 1987, offense sufficient to warrant a psychiatric evaluation for an insanity defense or factors in mitigation." Dr. Rossiter stated that the defendant was in "a highly irrational state caused by a paranoid delusional disorder" on that date and that the defendant "continues to suffer from a less obvious but severe mental disorder which significantly impairs his ability to communicate with [post-conviction] counsel." According to Dr. Rossiter, this disorder is characterized by "vague, evasive, illogical, oppositional and self-contradictory communications and thought processes about his mental state at the time of the offense and about his current participation in post-conviction proceedings." Dr. Rossiter concluded: "[I]t is my opinion that his original attorney's failure to have him psychiatrically examined for an insanity defense or for psychiatric factors in mitigation may represent ineffective assistance of counsel, and

that Mr. Tenner is now impaired in his ability to assist present counsel in that determination." In a supplemental petition, the defendant also alleged that a pretrial psychiatric evaluation would have enabled his trial attorneys to make an informed decision "[w]hether a *bona fide* doubt existed as to the defendant's fitness to cooperate with counsel and thus to stand trial, a doubt which appears to exist in light of Dr. Rossiter's evaluation and conclusion." The trial court dismissed the petition without an evidentiary hearing, and the defendant appealed to this court.

We affirmed. See *People v. Tenner*, 175 Ill. 2d 372 (1997). We rejected the defendant's argument that defense counsel's performance was deficient:

"This is not a case in which counsel wholly failed to investigate the defendant's background prior to trial or sentencing. Here, defense counsel retained a mitigation expert, who conducted an investigation into the defendant's personal history, though counsel later decided not to call that person as a witness either at trial or at sentencing. Nothing in the record at that time, however, suggested that the defendant suffered from any mental impairment, or that there was any need to pursue a separate inquiry into the defendant's mental condition. ***
***
Nothing in the defendant's record or personal history disclosed any history of mental illness or emotional disturbance; there was nothing to prompt a separate inquiry into the defendant's mental condition. In rejecting this portion of the defendant's post-conviction petition, the judge below, who had also presided at trial, explained:

'There was nothing to suggest a psychiatric exam in this young Defendant's background. If there had been anything that would have suggested [a] psychiatric exam, I probably would have ordered it *sua sponte.* I've been known to do that to satisfy myself as to the mental competency of a defendant in front of the bench. There's none of that in this record.'
Like the judge below, we do not believe that counsel acted

unreasonably in failing to obtain a mental evaluation of the defendant prior to trial." *Tenner*, 175 Ill. 2d at 380-81. We further held that even if the defense counsel's performance had been deficient, the defendant suffered no prejudice. *Tenner*, 175 Ill. 2d at 381. We stated:

"The defendant does not claim that he was insane at the time of the offenses involved in this case, and the defendant has failed to show that a mental evaluation would have revealed evidence that could have resulted in his acquittal on grounds of insanity. Notably, Dr. Rossiter did not find that the defendant was insane when he committed the present offenses. Although Dr. Rossiter believed that the defendant was delusional at the relevant time, Dr. Rossiter did not conclude that the defendant was insane." *Tenner*, 175 Ill. 2d at 381-82.

The Supreme Court denied the defendant's second *certiorari* petition. See *Tenner v. Illinois*, 522 U.S. 892, 139 L. Ed. 2d 163, 118 S. Ct. 231 (1997).

The defendant then filed a 38-claim petition for writ of *habeas corpus* in the United States District Court for the Northern District of Illinois. The federal district court denied the defendant relief in a lengthy unpublished order. See *United States ex rel. Tenner v. Gilmore*, No. 97 C 2305 (N.D. Ill. October 8, 1998). The defendant's *habeas corpus* petition does not appear in the record before us, so we cannot determine precisely what the defendant alleged. According to the district court, the defendant's "first two claims" charged that his constitutional rights were violated because a *bona fide* doubt about his mental competence existed, but the state trial court did not hold a fitness hearing. The district court rejected the State's argument that these claims were procedurally defaulted because the defendant raised them in his post-conviction petition only through his ineffective assistance of counsel claim: "the general rule that claims not raised in state proceedings are *** barred does not apply to substantive mental competency claims."

The district court then turned to the merits of the defendant's competency "claim" and held:

"After reviewing the record in this case, we find no merit in Tenner's competency claim. Although the circumstances surrounding the crime were irrational and bizarre, that alone cannot be equated with mental incompetence. [Citation.] Tenner has no prior history of mental illness and there is no evidence of past hospitalizations or treatment for a mental disorder. \*\*\*

Tenner did not exhibit any irrational behavior or unusual behavior during pretrial proceedings or at trial. At trial, his testimony was lucid and he understood and testified consistent with his trial strategy, which was to establish that he was guilty of only second degree murder, a noncapital offense. \*\*\* It is clear that Tenner participated actively and meaningfully in the adversarial process and that he was fit to do so."

The district court reviewed the evidence offered by the defendant, including Dr. Rossiter's 1994 report, and rejected the defendant's assertion that a "thought disorder" characterized by various qualities exhibited by the defendant—vagueness, evasiveness, guardedness, opposition—rendered him unable to understand the charges against him or to assist in his defense. The district court observed, "Such characteristics are not so atypical of one who has led a peaceful life but suddenly finds himself as the perpetrator of gruesome murders." The district court concluded that the trial court entertaining the defendant's first post-conviction petition was not unreasonable in concluding that Tenner was competent to stand trial and that a fitness hearing was unnecessary.

The United States Seventh Circuit Court of Appeals affirmed. See *Tenner v. Gilmore*, 184 F.3d 608 (7th Cir. 1999). The court of appeals noted that, though our comment that nothing in the record should have prompted an inquiry into the defendant's mental condition was made in the context of an ineffective assistance of counsel claim, "it is equally *apropos* to the competence issue." *Tenner*, 184 F.3d at 614. The court of appeals continued:

"Did the Supreme Court of Illinois act unreasonably in concluding that the trial judge lacked a good reason to doubt Tenner's mental soundness? We think that its assessment was eminently reasonable. Even now, Tenner's able counsel do not point to any circumstance beyond the facts of the crime itself that should have alerted the judge to any problem. The judge had ample opportunity to evaluate Tenner, not only in pretrial proceedings but also during his testimony. Tenner responded intelligently to questions posed by his lawyer (and those during cross-examination by the prosecutor). His testimony was lucid and suggested an understanding of the legal process and the nature of the charges against him. [Citation.] Tenner now relies principally on a psychiatric evaluation that came long after trial—and even this evaluation is of little use, for Dr. Rossiter did not offer an opinion about Tenner's ability to understand the proceedings or assist his lawyer at the time of trial. Rossiter concluded that Tenner had little understanding of, or ability to assist his post-trial counsel with, constitutional issues. That's true of most entirely competent defendants; indeed, many graduates of law school have trouble with constitutional questions from time to time. Rossiter did not suggest that Tenner was unable to understand the charges laid against him or to assist in a defense against them. That is the critical issue; so even with the benefit of hindsight it is not possible to condemn the state court's approach as 'unreasonable.' " (Emphases omitted.) *Tenner*, 184 F.3d at 614.

The Supreme Court denied the defendant's third *certiorari* petition. See *Tenner v. Schomig*, 528 U.S. 1052, 145 L. Ed. 2d 492, 120 S. Ct. 592 (1999).

The defendant then filed a 13-claim, second postconviction petition. As he had in his federal *habeas corpus* petition, the defendant challenged his fitness at trial and sentencing. The defendant made two related claims: claim I, alleging that his constitutional rights were denied because the trial court failed to hold a fitness hearing despite evidence establishing a *bona fide* doubt about his fitness; and claim II, alleging that his constitutional rights were denied because he was, in fact, unfit at

trial and sentencing. As support for this set of fitness allegations, the defendant initially relied upon Dr. Rossiter's 1994 report. The State filed a motion to dismiss the petition. In a supplemental response to the State's motion, the defendant added an additional claim, alleging that his constitutional rights were violated because this court refused to consider claims in his *pro se* brief on direct appeal. The defendant also supplied a second report by Dr. Rossiter. Dr. Rossiter's 2000 report purportedly addressed an issue not answered in his 1994 report: "whether or not James Tenner was fit to stand trial in March 1990 on charges of murder related to the events of September 1987." After a "current review" of the materials in this case, but not a current interview of the defendant, Dr. Rossiter opined that the defendant was *"more likely than not* unfit to stand trial in March 1990, and unable to assist his attorneys *** during his subsequent post conviction proceedings." (Emphasis added.) According to Dr. Rossiter, the defendant suffers from a "long-standing mental disorder characterized by paranoid and delusional thinking that leads him to deny that he is mentally ill and to communicate in a manner that is highly oppositional, evasive, vague, illogical, and self-contradictory."

In its ruling on the fitness claims, the trial court reviewed the previous post-conviction opinion from this court, as well as the two federal court opinions. The trial court stated:

"Now, there's a new letter from Rossiter, and in that letter *** he offers the opinion [that the defendant] was more likely than not unfit. In my opinion that letter is of no use whatsoever. I have never seen a medical opinion phrased in those terms. It[ ] almost appears to me to be speculation or guess more likely than not, and in my opinion has no probative value whatsoever. ***

So as far as the evidence based—at least looking here from an objective standpoint, there is no competent

evidence here, there is no evidence here that—you know, when you look also at Dr. Rossiter's other [1994 report], his sole basis [for] saying that he would be unfit was allegedly because he refused to cooperate with (Inaudible), but objectively looking at the record, he did cooperate with his attorneys, he was able to cooperate with his defense. [It] certainly is clear by his pro se filings that he's aware of the charges against him, he knows the function of various parties, he knows the possible penalties, he knows the court procedure, and he's able to communicate with counsel ***.

*** [T]here's no merit[ ] to this issue whatsoever."

The trial court also rejected the defendant's claim regarding his *pro se* brief. The defendant again appealed to this court.

## ANALYSIS

The Post-Conviction Hearing Act provides a procedural mechanism through which a criminal defendant can assert "that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122—1(a) (West 1998); see *People v. Coleman*, 183 Ill. 2d 366, 378-79 (1998). Once a capital defendant files a post-conviction petition, the trial court examines the petition and appoints an attorney for the defendant, if necessary. 725 ILCS 5/122—2.1(a)(1) (West 1998). The State then must answer or move to dismiss the petition. 725 ILCS 5/122—5 (West 1998). If the State files a motion to dismiss, the trial court must rule on the legal sufficiency of the defendant's allegations, taking all well-pleaded facts as true. *People v. Ward*, 187 Ill. 2d 249, 255 (1999). A defendant is not entitled to an evidentiary hearing unless the allegations of the petition, supported by the trial record and any accompanying affidavits, make a substantial showing of a constitutional violation. *People v. Enis*, 194 Ill. 2d 361, 376 (2000). Because a trial court's ruling on the sufficiency of the defendant's allegations is a legal

determination, our review is *de novo*. *Coleman*, 183 Ill. 2d at 388.

A post-conviction petition is a collateral attack upon a prior conviction and sentence, not a surrogate for a direct appeal. *People v. West*, 187 Ill. 2d 418, 425 (1999). Any issues which were decided on direct appeal are barred by *res judicata*; any issues which could have been raised on direct appeal are defaulted. *West*, 187 Ill. 2d at 425. Further, the Act contemplates the filing of only one petition: "Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122—3 (West 2000); see *People v. Free*, 122 Ill. 2d 367, 375-76 (1988). Consequently, a defendant faces immense procedural default hurdles when bringing a successive post-conviction petition. *People v. Jones*, 191 Ill. 2d 194, 198 (2000). Because successive petitions plague the finality of criminal litigation, these hurdles are lowered in very limited circumstances, "where fundamental fairness so requires." *People v. Flores*, 153 Ill. 2d 264, 274 (1992).

We have defined the fundamental fairness exception to procedural default in terms of the "cause-and-prejudice" test used by the United States Supreme Court in the context of successive federal *habeas corpus* petitions. See *People v. Owens*, 129 Ill. 2d 303, 317 (1989), citing *Wainwright v. Sykes*, 433 U.S. 72, 53 L. Ed. 2d 594, 97 S. Ct. 2497 (1977) (fundamental fairness requires a court to review a defaulted claim in a collateral proceeding only when the defendant shows cognizable cause for his failure to make a timely objection and actual prejudice resulting from the claimed error). Recently, in *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002), we reaffirmed that the cause-and-prejudice test is the analytical tool used to determine whether fundamental fairness requires a court to make an exception to the waiver provision of section 122—3 and to consider a claim raised in a succes-

sive post-conviction petition on its merits. Under this test, claims in a successive post-conviction petition are barred unless the defendant can establish good cause for failing to raise the claimed error in prior proceedings and actual prejudice resulting from the error. See *People v. Orange*, 195 Ill. 2d 437, 449 (2001); *Flores*, 153 Ill. 2d at 278-79. To establish "cause," the defendant must show some objective factor external to the defense impeded his ability to raise the claim in the initial post-conviction proceeding. See *Pitsonbarger*, 205 Ill. 2d at 460, citing *Flores*, 153 Ill. 2d at 279. To establish "prejudice," the defendant must show the claimed constitutional error so infected his trial that the resulting conviction violated due process. See *Owens*, 129 Ill. 2d at 317-18.

In this appeal, the defendant raises three issues. First, the defendant argues that the trial court erred in dismissing claims I and II of his second post-conviction petition without an evidentiary hearing because Dr. Rossiter's 2000 report established a *bona fide* doubt about the defendant's competency. Second, the defendant argues that these claims were not procedurally defaulted because he satisfied the cause-and-prejudice test with Dr. Rossiter's 2000 report. Third, the defendant argues that the trial court erred in dismissing claim XIV of his petition without an evidentiary hearing because his constitutional rights were violated when this court refused to consider the defendant's *pro se* brief on direct appeal, even though it has considered *pro se* briefs in other capital cases.

The third issue merits little discussion. In short, the defendant contends that this court violated equal protection principles in that, as a capital defendant, he was treated differently than other capital defendants. After the commutation order, however, the defendant is no longer a capital defendant. This issue is moot. See *People v. Jackson*, 199 Ill. 2d 286, 294 (2002); *cf. Lewis v. Com-*

*monwealth*, 218 Va. 31, 38, 235 S.E.2d 320, 325 (1977) (holding that commutation renders sentencing issues moot).

Further, were it not moot, this issue would be procedurally defaulted. The defendant has offered no cause, no objective factor external to his defense, which prevented him from raising this claim in his first post-conviction petition. The defendant filed his *pro se* brief on direct appeal, and our refusal to consider it should have been raised earlier. Though the defendant attempts to show cause by asserting that his direct appeal and post-conviction attorneys refused to raise the issues in his *pro se* brief, the defendant mistakes the issues in the brief for the issue about the brief itself. As the State convincingly demonstrates, every issue in the defendant's *pro se* brief was addressed by either this court or the federal courts.

Normally, we would proceed to examine whether the first and second issues pass the cause-and-prejudice test, but these claims require a more nuanced analysis. Citing a federal case, *James v. Singletary*, 957 F.2d 1562 (11th Cir. 1992), which distinguishes between procedural and substantive due process competency claims, the defendant suggests that "because the right not to be tried while actually incompetent is fundamental," he need not demonstrate cause and prejudice.

Some federal courts have identified two types of competency claims available to a *habeas corpus* petitioner: "First, a petitioner may allege that the trial court denied him or her due process by failing *sua sponte* to hold a competency hearing. *** Second, a petitioner may allege that he or she was denied due process by being tried and convicted while incompetent." *James*, 957 F.2d at 1571. That is, the prosecution of a potentially unfit defendant, without a fitness hearing, violates procedural due process; the prosecution of an actually unfit defen-

dant violates substantive due process. See *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995); *Nguyen v. Reynolds*, 131 F.3d 1340, 1346 (10th Cir. 1997). Under this rubric, a procedural due process claim is subject to default under the cause-and-prejudice test, but a substantive due process claim is not. See *Medina*, 59 F.3d at 1106-07; *Nguyen*, 131 F.3d at 1346. Understandably, the defendant characterizes at least one of his fitness claims as a substantive due process claim to escape procedural default.

We have not recognized a distinction between procedural and substantive due process competency claims, and we need not do so to decide this case. In his opening brief before us, the defendant's arguments concerning the dismissal of both his fitness claims are "combined" into his first issue because, as he recognizes, the question common to both claims is whether a *bona fide* doubt about his fitness at trial and sentencing existed. The State contends that this issue has already been decided by this court and the federal courts, and that "the law of the case" controls. Although we disagree that the law of the case doctrine applies, we agree that the defendant was precluded from raising this question in his second post-conviction petition.

The preclusion doctrines of *res judicata*, collateral estoppel, and law of the case prevent a defendant from "taking two bites out of the same appellate apple." *People v. Partee*, 125 Ill. 2d 24, 37 (1988). Specifically, the law of the case doctrine bars relitigation of an issue already decided in the same case. See *People v. Patterson*, 154 Ill. 2d 414, 468 (1992); *People v. McNair*, 138 Ill. App. 3d 920, 922 (1985) ("a determination of an issue on its merits by an appellate court is final and conclusive upon the parties in a second appeal in the same case, and the issues considered and decided cannot be reconsidered by the same court except on a petition for rehearing"). This

doctrine does not apply here because the instant case involving the defendant's second post-conviction petition is not the same case as either that involving his first post-conviction petition or that involving his federal *habeas corpus* petition.

Collateral estoppel, however, does apply. The collateral estoppel doctrine bars relitigation of an issue already decided in a prior case. See *People v. Enis*, 163 Ill. 2d 367, 386 (1994). That is, "[t]he doctrine applies 'when a party *** participates in two separate and consecutive cases arising on *different* causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction.' " (Emphasis in original.) *People v. Moore*, 138 Ill. 2d 162, 166 (1990), quoting *Housing Authority v. Young Men's Christian Ass'n of Ottawa*, 101 Ill. 2d 246, 252 (1984). The collateral estoppel doctrine has three requirements: (1) the court rendered a final judgment in the prior case; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior case; and (3) the issue decided in the prior case is identical with the one presented in the instant case. *People v. Franklin*, 167 Ill. 2d 1, 12 (1995).

Here, the first two requirements are easily met. This court rendered a final judgment on the defendant's first post-conviction petition; similarly, the federal courts rendered final judgments on the defendant's *habeas corpus* petition. The defendant was a party in each case. The sole remaining inquiry is whether the issue decided in those cases is identical to the one presented here, namely, whether a *bona fide* doubt about the defendant's fitness at trial and sentencing existed.

The claim before us in the defendant's first post-conviction appeal was whether his trial attorneys were ineffective for failing to obtain a psychiatric evaluation of

the defendant. But at the core of the ineffective assistance claim was the issue of whether the defendant's mental condition warranted examination. In fact, as we have observed, the defendant's supplemental first post-conviction petition even asserted that a psychiatric evaluation would have enabled his trial attorneys to make an informed decision "[w]hether a *bona fide* doubt existed as to the defendant's fitness to cooperate with counsel and thus to stand trial." In rejecting the defendant's ineffective assistance claim, we found that nothing in the trial record suggested the defendant suffered from a mental disorder and nothing showed he had a history of mental illness or emotional disturbance. See *Tenner*, 175 Ill. 2d at 380. Although we did not use the phrase "*bona fide* doubt," we decided, in effect, that the record did not contain evidence which would have cast a doubt on the defendant's fitness.

This very issue was also decided by the federal courts, without the veneer of an ineffective assistance claim. The defendant's first two federal *habeas corpus* claims addressed his fitness. The federal district court found no merit to these claims: the defendant participated in his defense, and he was fit to do so. The federal court of appeals found our assessment that the post-conviction trial court lacked a good reason to doubt the defendant's fitness was "eminently reasonable." *Tenner*, 184 F.3d at 614.

The defendant contends that Dr. Rossiter's 2000 report is "new evidence," which directly addresses for the first time the defendant's fitness at trial and sentencing. See *Enis*, 163 Ill. 2d at 386 (collateral estoppel does not apply if the defendant offers additional evidence). This position is contrary to the one taken by the defendant in his supplemental first post-conviction petition. There, the defendant asserted that Dr. Rossiter's 1994 report created an apparent doubt about the defen-

dant's competency. More importantly, Dr. Rossiter's two reports are strikingly similar, and his findings remain the same. A refashioned psychiatric report drafted by a psychiatrist obtained by defense counsel, and based on a "current review" of existing evidence, is not new evidence which prevents collateral estoppel. We refuse to sanction piecemeal post-conviction litigation by allowing the defendant to gild previously rejected fitness claims with self-described "new" expert reports. See *People v. White*, 198 Ill. App. 3d 781, 784 (1989) ("petitioner is barred from retrying issues actually litigated and decided in a collateral proceeding [citation] by rephrasing essentially the same argument"); *cf. People v. Evans*, 186 Ill. 2d 83, 103 (1999) ("A petitioner cannot obtain relief under the Act by rephrasing issues, which were previously addressed, in constitutional terms").

As we have previously noted, "It is for this court, and not Dr. Rossiter, to determine whether there existed a *bona fide* doubt of defendant's fitness." *People v. Burt*, 205 Ill. 2d 28, 44 (2001). This issue has been decided against the defendant by every court to consider it. We decline to consider it again. The trial court correctly dismissed claims I and II of the defendant's second post-conviction petition.

## CONCLUSION

For the reasons that we have discussed, we affirm the judgment of the Cook County circuit court.

*Affirmed.*

JUSTICE RARICK took no part in the consideration or decision of this opinion.

JUSTICE FREEMAN, specially concurring:

I agree that the circuit court's judgment must be affirmed in this case. I write separately, however, to express my views on several aspects of today's opinion.

In addressing claims I and II, the court asserts that while it would normally examine whether the claims pass the cause and prejudice test, "these claims require a more nuanced analysis." 206 Ill. 2d at 394. The court also states that it need not recognize the distinction, recognized in federal courts, between procedural and substantive due process competency claims because the common question to each is the *bona fide* doubt issue, which has previously been decided by both this court and the federal courts. 206 Ill. 2d at 395. The court concludes that collateral estoppel precludes defendant from reasserting the issue in this action. 206 Ill. 2d at 396.

It appears to me that the court views the issue raised in this proceeding as the same issue defendant presented in his earlier state post-conviction proceeding. See 206 Ill. 2d at 396. If this is the case, I believe that the cause and prejudice test would be inapplicable since the test is couched in terms of "cause" for *the failure to raise a claim in an earlier proceeding* and prejudice resulting therefrom. *People v. Orange*, 195 Ill. 2d 437, 449 (2001). An issue that was previously litigated and is raised anew in a successive proceeding can never fall under the ambit of the cause and prejudice test because the issue had, indeed, been raised in the earlier proceeding. I believe it is this fact which makes the cause and prejudice test inapplicable in the present case and not the fact that defendant's competency claims "require" a different analysis. To that end, I believe that it would behoove this court to distinguish between "same-claim" successive petitions and "new claim" successive petitions.[1] New claims, *i.e.*, those never before raised, are subject to

---

[1]This distinction is recognized by the federal courts in *habeas corpus* proceedings. See J. Liebman & R. Hertz, Federal Habeas Corpus Practice & Procedure § 28.2b (3d ed. 1998). Although the doctrine of *res judicata* does not bar successive petitions on *habeas corpus*, the United States Supreme Court has allowed the federal

waiver, or more appropriately procedural default, and would be excused only if the petitioner established both cause and prejudice for the failure to raise the issue sooner. On the other hand, same claims, *i.e.* those issues raised in a previous post-conviction action, fall prey to the procedural bar of *res judicata*.

This leads me to comment on whether the issues raised in defendant's first state post-conviction proceeding collaterally estop his pursuit of the competency issues in the proceeding at bar. Unlike my colleagues, I do not believe that the issue here is the same as the issue this court confronted in defendant's first post-conviction action. There, defendant claimed that he received ineffective assistance of counsel at trial because his trial attorney failed to have defendant's mental condition evaluated prior to trial for purposes of an insanity defense. According to defendant, such an evaluation would have revealed that defendant suffered from mental disorders which could have given rise to a potential insanity defense or potential mitigation evidence. The circuit court rejected this claim, dismissing it without an evidentiary hearing. On appeal, we affirmed, holding that there was nothing in defendant's background which

---

*habeas* courts to consider dismissing a petition when the same claims have been previously raised in an earlier federal *habeas corpus* proceedings and the ends of justice would not be served by relitigation. See *Wong Doo v. United States*, 265 U.S. 239, 68 L. Ed. 999, 44 S. Ct. 524 (1924); *Salinger v. Loisel*, 265 U.S. 224, 68 L. Ed. 989, 44 S. Ct. 519 (1924). Congress codified the Court's holding in 1948, and in 1963 the Supreme Court construed the provision. See *Sanders v. United States*, 373 U.S. 1, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963). Same-claim petitions are barred only if (i) the same ground presented in the subsequent case was determined adversely to the petitioner in the first proceedings, (ii) the previous determination was on the merits, and (iii) the ends of justice would not be served by reaching the merits of the subsequent petition. J. Liebman & R. Hertz, Federal Habeas Corpus Practice & Procedure § 28.2b (3d ed. 1998).

would have or should have prompted a psychological evaluation to determine defendant's sanity at the time of the offense. As a result, trial counsel was not deficient in failing to seek the evaluation. In so holding, we pointed out that the post-conviction judge, who had also presided over defendant's trial, specifically stated that " '[i]f there had been anything that would have suggested [a] psychiatric exam, I probably would have ordered it *sua sponte*. I've been known to do that to satisfy myself as to the mental competency of a defendant in front of the bench. There's none of that in this record.' " *Tenner*, 175 Ill. 2d at 81. We further held that even if counsel had been deficient, defendant had not been prejudiced because he "failed to show that a mental evaluation would have revealed evidence that could have resulted in his acquittal on grounds on insanity." *Tenner*, 175 Ill. 2d at 382.

As the foregoing reveals, in the previous case, this court never considered the issue of defendant's competence to stand trial. Incompetence at the time of trial is a different question from insanity at the time of the offense. The latter is concerned with whether a defendant appreciated the criminality of his or her conduct and whether the defendant could conform that conduct to the law at the time of the events in question. In contrast, questions as to fitness to stand trial address whether, at the time of trial, a defendant has the ability to understand the proceedings and to assist in his or her defense. *Godinez v. Moran*, 509 U.S. 389, 125 L. Ed. 2d 321, 113 S. Ct. 2680 (1993). In my view, our previous decision did not speak to the question of competency to stand trial. Instead our analysis was confined to the issue of whether counsel was ineffective for failing to have defendant undergo a psychiatric examination for a potential insanity defense. Although aspects of our discussion touched upon defendant's demeanor during trial proceedings, we

made these observations in the course of assessing whether trial counsel should have investigated the possibility of mounting an insanity defense. We did not speak specifically to the question of whether a *bona fide* doubt as to competency existed.

I note that the court points to a supplemental petition, filed by defendant in his first state post-conviction petition, in which defendant alleged that a psychiatric evaluation would have enabled his trial attorneys to make "an informed decision" about his fitness to stand trial. 206 Ill. 2d at 386. My review of the record, however, reveals that neither the post-conviction judge nor this court addressed the matter of fitness in any depth. In fact, when defendant asserted his competency claims in federal court, the State raised the procedural bar of default, arguing that defendant had failed to raise the matter in state court. The federal district court, however, refused to enforce the bar, specifically noting that incompetency claims are never subject to procedural default. *Tenner v. Gilmore*, No. 97—C—2305 (N.D. Ill. October 8, 1998). The fact that the State argued procedural default, coupled with the district court's assertion of an exception to the procedural default bar, leads me to conclude that neither the State nor the district judge believed that the precise issue had ever been given a full hearing in the state courts. Under these circumstances, I am reluctant to hold that the issue decided in the first post-conviction is "identical" to the issue presented in the case at bar.

Nevertheless, I believe that the federal courts have spoken definitively on the issues raised by defendant in the proceeding at bar and that the decisions of the federal courts collaterally estop defendant from litigating the matters anew in our state courts. Defendant argues that Dr. Rossiter's 2000 report is new evidence that prevents collateral estoppel from applying. Dr. Rossiter's report,

however, does not constitute new evidence—it is not based on any recent evaluations of defendant nor does it present any new facts regarding defendant's behavior at the time of trial. In fact, Dr. Rossiter does not even opine that defendant was unfit at the time of trial. Rather, he contends that defendant "was more likely than not unfit to stand trial in March 1990." In my view, this conclusion, based on a current review of existing evidence, does not rise to the level necessary to preclude the application of collateral estoppel.