NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220897-U

NO. 4-22-0897

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 17, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| AARON MICHAEL PARLIER, | ) | No. 18CF92 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Casey Costigan, |
| | ) | Judge Presiding. |

---

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1     *Held*: (1) Defendant is collaterally estopped from challenging the police's good-faith reliance on a search warrant.

(2) Although the circuit court misremembered some evidence, the error concerned a detail that was not crucial, and thus, the error did not violate defendant's right to due process.

¶ 2     In a bench trial, the circuit court of McLean County found defendant, Aaron Michael Parlier, guilty of committing multiple sex offenses against a child and of possessing child pornography. The court sentenced him to natural-life imprisonment, nine consecutive prison terms of 15 years, and two concurrent prison terms of 7 years. Defendant appeals on two grounds.

¶ 3     First, defendant argues that the circuit court erred by denying his motion for the suppression of evidence. We hold that he is collaterally estopped from making this argument.

¶ 4    Second, defendant claims that by misremembering some evidence, the circuit court denied him his right to due process. In our *de novo* review, we find no due-process violation. The error concerned a detail that was not crucial.

¶ 5    Therefore, we affirm the circuit court's judgment.

¶ 6                                        I. BACKGROUND

¶ 7    On January 30, 2018, the circuit court issued a warrant authorizing the police to search 15930 Deer Lane in Mackinaw, Illinois, and all computers and digital storage devices in the house. Police officers executed the warrant that same day. In their search of the house, they seized a laptop computer, which, as it turned out, contained child pornography.

¶ 8    Afterward, a grand jury indicted defendant on 38 counts.

¶ 9    In counts I to XI and in count XVIII, the victim was A.G. Count I alleged an offense of predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2008) (renumbered as 720 ILCS 5/11-1.40(a)(1) by Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011)); 720 ILCS 5/12-14.1(a)(1) (West 2010) (renumbered as 720 ILCS 5/11-1.40(a)(1) by Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011))). Counts II to X alleged offenses of criminal sexual assault (*id.* § 12-13(a)(4) (West 2010) (renumbered as 720 ILCS 5/11-1.20(a)(4) by Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011)); 720 ILCS 5/11-1.20(a)(4) (West 2012)). Count XI alleged an offense of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2004) (renumbered as 720 ILCS 5/11-1.60(c)(1)(i) by Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011)); 720 ILCS 5/12-16(c)(1)(i) (West 2008) (renumbered as 720 ILCS 5/11-1.60(c)(1)(i) by Pub. Act 96-1551, art. 2, § 5 (eff. July 1, 2011))). Count XVIII alleged an offense of child pornography (720 ILCS 5/11-20.1(a)(6) (West 2014); 720 ILCS 5/11-20.1(a)(6) (West 2018)). Before trial, the State dismissed counts XII to XVII.

¶ 10    In counts XIX to XXXVIII, the victim was E.W. Counts XIX to XXVIII alleged offenses of child pornography (720 ILCS 5/11-20.1(a)(1)(ii) (West 2012); 720 ILCS 5/11-20.1(a)(1)(ii) (West 2014); 720 ILCS 5/11-20.1(a)(1)(ii) (West 2016)). Counts XXIX to XXXVIII alleged offenses of predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2012); 720 ILCS 5/11-1.40(a)(1) (West 2014); 720 ILCS 5/11-1.40(a)(1) (West 2016)).

¶ 11    Before any of the charges went to trial, defense counsel moved for the suppression of all evidence the police had obtained by executing the search warrant. According to this motion, the search warrant was unsupported by probable cause, given that (1) the factual allegations in the underlying complaint for the warrant were stale and (2) the complaint failed to establish a nexus between the suspected crimes and the Deer Lane residence. The circuit court denied the motion.

¶ 12    The circuit court, however, granted defendant's motion to sever the counts pertaining to A.G. from the counts pertaining to E.W.

¶ 13    The State chose to proceed first on the counts pertaining to E.W. On October 22, 2021, in a bench trial, the circuit court found defendant guilty of counts XIX to XXXVIII. On January 14, 2022, the court sentenced him to imprisonment for a total of 450 years.

¶ 14    Defendant appealed in the case pertaining to E.W. One of the arguments he made on appeal was that the circuit court had erred by denying his motion for the suppression of evidence. *People v. Parlier*, 2023 IL App (4th) 220091, ¶ 33. He maintained that the search warrant lacked probable cause because (1) the factual allegations in the complaint for the search warrant were stale and (2) the complaint failed to establish a nexus between the alleged offenses, defendant, and the places to be searched. See *id.* The appellate court found that, in any event, the police officers' reliance upon the search warrant had been in good faith. *Id.* ¶ 2. Therefore, the

appellate court upheld the denial of the motion for suppression. *Id.* Finding no merit in defendant's remaining arguments, the appellate court affirmed the judgment in the case pertaining to E.W. *Id.* ¶¶ 3-5. On May 24, 2023, the supreme court denied defendant's petition for leave to appeal.

¶ 15    In the other case—the present case—in which A.G. was the victim, the State moved for a ruling that some uncharged bad acts by defendant would be admissible as propensity evidence in the trial. See 725 ILCS 5/115-7.3 (West 2020). Over defense counsel's objection, the circuit court ruled that testimony by E.W. and G.L., as well as corresponding video evidence, would be admissible to prove propensity.

¶ 16    In the case regarding A.G., as in the case regarding E.W., defendant waived a jury trial. The bench trial took place in October 2021.

¶ 17    A.G. testified that defendant used to be her piano teacher. The prosecutor asked A.G.:

> "Q. Did the relationship between you and the Defendant ever change into something other than him being your piano teacher?
>
> A. Yes.
>
> Q. How old were you when something first happened?
>
> A. I was—it blends together. I was young. I was still in elementary school.
>
> Q. Were you under 13?
>
> A. Correct. Eight—eight or nine.
>
> Q. And what happened the first time something happened?"

A.G. answered that defendant was giving her a piano lesson in a back room of Horine's Pianos Plus in Bloomington, Illinois, when he reached down, inside the front of her shirt, and touched her. The prosecutor asked A.G.:

"Q. And when he put his hand down your shirt what part of your body did he touch if any?

A. My breasts and my chest.

Q. Was that over or under your clothing?

A. Under my shirt, over a bra.

Q. And did he eventually progress—did it eventually progress into more?

A. Yes.

* * *

Q. And was anyone else present other than you and the Defendant during this first time?

A. No.

Q. Approximately how many times did that happen?

A. More times than I could count. I honestly couldn't give you a specific number.

Q. You indicated that he had touched over—it was over your bra the very first time it happened.

A. Yeah.

Q. Did it eventually escalate into anything else?

A. Yes.

Q. Did he eventually touch under your clothing?

A. Yes.

Q. And did he touch your bare skin when he did that?

A. Yes.

Q. And was that prior to your 13th birthday?

A. Correct."

A.G. went on to testify that she was not yet 13 when she first had vaginal intercourse with defendant.

¶ 18      On December 5, 2017—it further emerged in the trial—defendant gave a statement to the police, in which he admitted having a sexual relationship with A.G. about four or five years before the interview (when A.G. was 14 or 15) and when A.G. was in junior high school. In this interview, a detective told defendant that a different girl, G.L., had said that she once had a conversation with defendant about bras. According to G.L. (as the detective recounted her statement), defendant conferred with G.L. about buying bras for his girlfriend, and he discussed bra-cup sizes with G.L., touching G.L.'s breast to estimate G.L.'s bra-cup size. Defendant told the detective he remembered seeking G.L.'s advice about bras for his girlfriend but that he did not recall touching G.L.'s breast.

¶ 19      After the close of evidence, defense counsel argued that A.G. was unreliable in her recollection of how old she was when defendant had sexual contact with her.

¶ 20      The circuit court found defendant guilty on all counts: counts I to XI and count XVIII. In announcing its finding of guilt on count XI, a count alleging that defendant committed aggravated criminal sexual abuse by touching A.G.'s chest, the court remarked:

> "In her testimony, A.G. stated that she began taking piano lessons from the defendant at the age of six and that continued until the sixth grade. She stopped taking piano lessons, but continued interaction with the defendant after the lessons stopped. A.G. testified that when she was eight or nine, the first inappropriate incident occurred. A.G. stated that the defendant put his hand down her shirt over

her bra, and then under her bra. This occurred in the back room of the piano studio where the lessons were being given. *This conversation—the conversation that preceded this inappropriate conduct was the defendant talking about a bra for his girlfriend.*

The Court finds A.G.'s testimony as to this incident credible and believable. The Court is convinced that A.G. was under 13 at the time that this incident took place and the defendant was over 17. The Court is convinced especially given the propensity evidence that it considered that this act was done for the purpose of sexual gratification. The Court finds that the allegations of Count [XI] have been proven beyond a reasonable doubt." (Emphasis added.)

¶ 21                                    II. ANALYSIS

¶ 22                              A. Collateral Estoppel

¶ 23        Defendant contends that, for three reasons, the issuance of the search warrant was unsupported by probable cause and that, consequently, the evidence the police obtained by executing the warrant should have been suppressed. See section 114-12(a)(2) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12(a)(2) (West 2018)). First, in defendant's view, the complaint for the search warrant relied entirely on stale allegations. Second, defendant claims that the complaint failed to establish a nexus between the Deer Lane house and himself. Third, he claims that the complaint failed to establish a nexus between the house and the evidence that the police sought. Defendant further contends that the complaint was a bare-bones document that was deficient on its face and that the police, therefore, could not have relied on the resulting search warrant in good faith. See *id.* § 114-12(b)(1).

¶ 24    In *Parlier*, 2023 IL App (4th) 220091, ¶ 2—as defendant acknowledges—we found that the police officers' reliance upon the search warrant had been in good faith, and consequently, we upheld the denial of the motion for suppression of evidence. The doctrine of collateral estoppel now bars the relitigation of the issue of whether the police relied on the warrant in good faith. See *People v. Tenner*, 206 Ill. 2d 381, 396 (2002).

¶ 25    As the supreme court explained in *Tenner*, there are three requirements for collateral estoppel: "(1) the court rendered a final judgment in the prior case; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior case; and (3) the issue decided in the prior case is identical with the one presented in the instant case." *Id.* All three requirements are fulfilled. First, the potential for appellate review in *Parlier* is exhausted, making the appellate court's judgment in that case final. See *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 158-59 (2010). Second, defendant was a party in *Parlier*. Third, the good-faith issue resolved in *Parlier* is identical to the good-faith issue defendant raises now.

¶ 26    In sum, then, defendant is collaterally estopped from contesting the good-faith reliance of the police officers on the search warrant. Likewise, he is collaterally estopped from contesting *Parlier*'s conclusion that, under the good-faith exception in section 114-12(b)(1) of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12(b)(1) (West 2018)), the evidence is not suppressible. See *KT Winneburg, LLC v. Roth*, 2020 IL App (4th) 190274, ¶ 27 (noting that "collateral estoppel applies not only to findings of fact but also to conclusions of law"). Suppressibility cannot be relitigated.

¶ 27                                B. Due Process

¶ 28    As the circuit court remembered the evidence, defendant was giving eight- or nine-year-old A.G. a piano lesson in a back room of a piano studio, and before reaching into A.G.'s

shirt and touching her chest and breasts, he had a discussion with A.G. about buying bras for his girlfriend. This recollection of the evidence was mistaken in that it was with G.L., not with A.G., that defendant had a conversation about buying bras for his girlfriend.

¶ 29 Citing *People v. Williams*, 2013 IL App (1st) 111116, ¶¶ 85-91, 98, defendant argues that "a circuit court reversibly errs when it relies on a mistaken recollection of the record to create unfounded factual findings on a matter pertinent to the defense." Actually, pertinence to the defense was not the standard in *Williams*. Instead, *Williams* held that "the [circuit] court's failure to recall *crucial* testimony *from the only defense witness* was a due process violation." (Emphases added.) *Id.* ¶ 86. G.L. was not a defense witness. Nor was it a defense witness who testified to G.L.'s statement. Therefore, *Williams* is not directly applicable.

¶ 30 Another decision that defendant cites, however, uses broader language than *Williams*. In *People v. Heard*, 2021 IL App (1st) 192062, ¶ 16, the appellate court held, "Failure of the [circuit] court to correctly recall crucial evidence is a denial of defendant's right to due process." So, according to *Heard*, it was a due-process violation for the circuit court to misremember any kind of crucial evidence. Crucial, misremembered evidence need not have been adduced in the defendant's case. It could have been adduced in the State's case—as indeed it was in *Heard*.

¶ 31 In *Heard*, a police officer pulled the defendant over for running a stop sign. *Id.* ¶ 4. During the traffic stop, the officer questioned the defendant about a knotted plastic bag that the officer saw sticking out of the center console. *Id.* ¶ 5. The defendant handed the bag to the officer and told him it contained " 'old dust.' " *Id.* ¶ 7. Suspecting that the so-called dust was narcotics, the officer arrested the defendant. *Id.* Chemical testing later confirmed the officer's suspicion. *Id.* ¶ 10. The defendant, however, filed a motion for the suppression of evidence, arguing that the

arrest had been unsupported by probable cause. *Id.* ¶ 3. After hearing testimony by the officer and after watching video footage from his body camera, the circuit court denied the motion. *Id.* ¶ 9. The defendant then opted for a bench trial. *Id.* ¶ 10. After closing arguments in the trial, the court found the defendant guilty because, in the traffic stop, the defendant acknowledged that the substance in the bag was dust and because, according to the court, dust was " 'a street term for the drug commonly known as ecstasy.' " *Id.* ¶ 11. Later, in a hearing on the defendant's motion for a new trial, the court altered its rationale for its finding of guilt: the court now asserted that the police officer had testified that " 'dust' " was " 'a common term *** for a particular controlled substance.' " *Id.* ¶ 12. But the police officer never so testified. *Id.* ¶ 19. So, not only did the court improperly take judicial notice that dust was a street term for ecstasy (*id.* ¶ 18), but the court inaccurately remembered the police officer as testifying that dust was a street term for ecstasy (*id.* ¶ 19). In addition to invalidating the judicial notice, the appellate court held that "[f]ailure of the [circuit] court to correctly recall crucial evidence [was] a denial of [the] defendant's right to due process." *Id.* ¶ 16. The appellate court concluded that "[t]he [circuit] court's misremembering prejudiced [the defendant]." *Id.* ¶ 19.

¶ 32        Defendant argues that, similarly, in the present case, the circuit court's misremembering of A.G.'s testimony prejudiced him. Contrary to the court's explanation for its finding of guilt on count XI, A.G. never testified that before touching her breast for the first time, defendant conferred with her about buying bras for his girlfriend. The court mistakenly transplanted part of G.L.'s statement into A.G.'s testimony. In defendant's view, this error prejudiced him because (1) he was guilty of count XI only if A.G. was "under 13 years of age" when defendant "commit[ted] an act of sexual conduct with" her (720 ILCS 5/11-1.60(c)(1)(i) (West 2018)); (2) when asked how old she was when defendant first touched her chest, A.G.

testified that "it blend[ed] together"; and (3) the incidental detail in question—the supposed conversation defendant had with A.G. about buying bras for his girlfriend—led the court to think that A.G.'s memory, including her memory of her age, was better and more specific than it really was.

¶ 33    "Whether a defendant's due process rights have been denied is an issue of law, and thus, our review is *de novo.*" *Id.* ¶ 16. In our *de novo* review, we are unconvinced of the cruciality of the circuit court's mistake. "Failure of the [circuit] court to correctly recall *crucial* evidence is a denial of [the] defendant's right to due process." (Emphasis added.) *Id.* We assume the circuit court was a reasonable trier of fact, and to a reasonable trier of fact, whether A.G. was younger than 13 when defendant touched her chest would not turn on A.G.'s memory of a conversation about bra-cup sizes. Count XI alleged that "on or about the 18th day of July, 2005[,] through the 18th day of July, 2009," defendant touched A.G.'s chest for his own sexual gratification, and in her testimony, A.G. testified to having innumerable sexual encounters with defendant before she turned 13. In fact, A.G. testified that before she was 13, her physical relationship with defendant had already progressed to vaginal intercourse. It seems unlikely that A.G.'s memory would have been uncertain in that regard. When she testified that "it blends together," she meant that defendant's sexual assaults upon her before she turned 13 were too numerous to recall—"[m]ore times than I could count," as she put it. In other words, it was not that there was an isolated episode in which defendant touched her chest and she was unsure whether it happened before or after she turned 13. Rather, there was a plenitude of sexual conduct before she turned 13, such that the incidents all ran together in her memory. When A.G.'s testimony is reasonably so understood, the error of which defendant complains is not pivotal, and the error is not so egregious as to amount to a due-process violation.

¶ 34                          III. CONCLUSION

¶ 35          For the foregoing reasons, we affirm the circuit court's judgment.

¶ 36          Affirmed.