2026 IL App (1st) 240944-U

FOURTH DIVISION
Order Filed: May 21, 2026

No. 1-24-0944

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 02 CR 2487001 |
| BARRY MORRIS, | ) ) | Honorable Maria Kuriakos-Ciesel, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Justices Ocasio and Quish concurred in the judgment.

ORDER

¶ 1    *Held*:  The circuit court did not err by denying the defendant leave to file a successive postconviction petition.

¶ 2    On August 27, 2002, the defendant-appellant, Barry Morris, shot at his estranged wife, Tywana Morris, and her boyfriend, Ricky Pearce, killing him. The circuit court found Mr. Morris guilty of first degree murder, home invasion, and aggravated unlawful restraint. The court sentenced him to 50 years' imprisonment for the murder conviction, a consecutive 21-year term for the home invasion conviction, and a 5-year concurrent term for aggravated unlawful restraint.

On December 17, 2008, Mr. Morris filed a postconviction petition, which the court dismissed at the second stage. On November 29, 2023, Mr. Morris filed a motion for leave to file a successive postconviction petition arguing that trial counsel was ineffective for not raising an insanity defense. The court denied the motion for leave to file a successive postconviction petition. On appeal, Mr. Morris argues the circuit court erred by denying him leave to file a successive postconviction petition. For the reasons that follow, we affirm the judgment of the circuit court of Cook County.

¶ 3                                              BACKGROUND

¶ 4      We state only the facts necessary to resolve this appeal. For a full recitation of the facts, see *People v. Morris*, 2015 IL App (1st) 131008-U.

¶ 5      On November 30, 2004, the trial court conducted a bench trial on the charges. The State called Tywana Watts Morris to testify.

¶ 6      Ms. Morris testified that she married Mr. Morris on May 3, 1993, and that they lived together until July 27, 2002, when she decided to move out. Shortly after moving out, she moved in with her boyfriend, Mr. Pearce. Mr. Morris asked her multiple times to come back home as he wanted to repair their marriage. On August 27, 2002, she and Mr. Pearce were leaving Mr. Pearce's apartment around 5:30 a.m. heading to work when she saw Mr. Morris lying in the bushes in the front yard of the building. She called out to him, and he started chasing them with a rifle in his hand, while shooting at them. As they ran back to the building, Mr. Morris followed about 10 to 12 feet behind them. Mr. Pearce tried to wrestle the firearm from Mr. Morris in the courtyard of the building and got shot. Ms. Morris stepped in front of Mr. Morris, begging him not to shoot Mr. Pearce again but Mr. Morris pushed her aside. Mr. Pearce began running again with Mr. Morris

chasing him. Ms. Morris pulled out her phone and called 911. As she made it to the front of the building, she saw Mr. Morris coming out of the gangway, running toward her. She ran down the street and tried to hide behind a car but he jumped on top of the car, telling her to stop running or he would shoot her. He picked her up, carrying her on his shoulder, and started walking down the street.

¶ 7     As Mr. Morris was carrying Ms. Morris, she escaped and asked an older man to help her, but Mr. Morris pointed the firearm at that man. Next, a younger man came out of a nearby building and Mr. Morris started pointing the firearm at him. She ran into the younger man's apartment and a lady in that apartment started to call the police but hung up when she heard the police coming down the street. Mr. Morris disappeared, and Ms. Morris went to look for Mr. Pearce. She saw that he was shot and lying motionless in the gangway that Mr. Morris had left before he chased her earlier.

¶ 8     Edna Chase Pillar testified that on the morning of August 27, 2002, she was in her apartment when Mr. Morris broke into her apartment with a rifle or shotgun. He directed her to her bedroom, and she asked him "what do you want?" About 10 minutes later, the police knocked on the apartment door, and he told them not to come in or he would kill her. Mr. Morris was in her apartment for approximately four hours. At some point, he told her that he shot "his ex-wife's boyfriend or his wife's boyfriend" because his wife left. While holding her hostage, he made multiple calls and in one of them, told someone where he wanted to be buried. He told Ms. Pillar that he was going to commit suicide, but she told him not to do that. Mr. Morris eventually surrendered to police officers.

¶ 9      James Pearce testified that he was Mr. Pearce's brother. He stated that two weeks prior to August 27, 2002, he received a call from Mr. Morris, who thought he was calling his brother, Ricky Pearce. In the phone call, he identified himself as Ms. Morris' husband and said he knew where he lived, he knew "how to get [him]," and "can get [him] at any time he wanted."

¶ 10      Laquesha Watts testified that she is the sister of Ms. Morris and that she talked to Mr. Morris over the phone about once a week during Ms. Morris' and Mr. Morris' marriage.  On August 26, 2002[1], at approximately 8:30 p.m., Mr. Morris called her and said that he was looking for Ms. Morris and "that if he couldn't have her, then no one could have her and he was going to kill her and kill Ricky." Mr. Morris called again an hour later saying basically the same thing.

¶ 11      Mr. Morris testified that on August 27, 2002, he went over to where Mr. Pearce and Ms. Morris were living. He said that he brought the rifle to scare them, but when he saw them walking together he "snapped." Mr. Morris admitted that he was seeing multiple counselors for grief between the time his wife left him and the day of the shooting.

¶ 12      During closing arguments, defense counsel argued for second degree murder based on serious provocation as a result of Ms. Morris' adultery. The trial court found him guilty of first degree murder, home invasion, and unlawful restraint. The court sentenced him to an aggregate sentence of 71 years' imprisonment. Mr. Morris filed a direct appeal arguing a violation of the one-act, one-crime doctrine, and this court affirmed the trial court's judgment. *People v. Barry Morris*, 381 Ill. App. 3d 1138 (2008) (table).

---

[1] The transcript states the call occurred on August 26, 2000, this is likely a scrivener's error or a misspeak in the question because the call refers to a time after Ms. Morris moved out, which occurred in July 2002.

¶ 13    On December 17, 2008, Mr. Morris filed his initial postconviction petition, alleging that his trial counsel provided ineffective assistance of counsel for failing to raise the issue of his fitness. He attached affidavits of his brother, Ethan Morris, his other brother, Derrick Morris, and his friend, Michele Lee. All the affidavits stated that they had seen him acting strangely during the month of August 2002. Mr. Morris' postconviction counsel amended the petition to argue insanity as an affirmative defense as well. The trial court dismissed the petition, and he appealed the decision. This court affirmed the dismissal in part because there was no evidence that Derrick Morris or Ms. Lee ever spoke to trial counsel and Ethan Morris could not speak to Mr. Morris' state of mind on the morning of the shooting.

¶ 14    On November 29, 2023, Mr. Morris filed a motion for leave to file a successive postconviction petition arguing again that trial counsel was ineffective for not raising an insanity defense. In his petition, he also attached updated affidavits from the same affiants. The new affidavits all asserted that they had spoken to trial counsel regarding Mr. Morris' mental health and their willingness to testify. However, they all stated that they never spoke with postconviction counsel or an investigator from counsel's office.

¶ 15    Ethan Morris' affidavit stated that the marital separation "messed up [his] brother mentally in every way." He asserted that during the two months before the shooting Mr. Morris was seeking professional help for his long history of mental illness and self-medicating through drug abuse. He also averred that Mr. Morris was talking to himself weeks before the shooting. Derrick Morris' affidavit asserted the same details as his brother's affidavit and that his brother appeared to be hallucinating in the middle of August when he visited him. Ms. Lee's affidavit stated that she

witnessed Mr. Morris talking to himself in July and August 2002 and saw him "acting strangely" in the hours before the shooting.

¶ 16    On January 26, 2024, the trial court denied the motion orally without a written order. On April 10, 2024, Mr. Morris filed his notice of appeal. On April 29, 2024, Mr. Morris filed a motion for leave to file a late notice of appeal in this court. This court granted that motion on May 7, 2024.

¶ 17                                    ANALYSIS

¶ 18    We note that we have jurisdiction to consider this matter, as Mr. Morris filed a timely notice of appeal. See Ill. S. Ct. R. 606(c) (eff. July 1, 2017).

¶ 19    Mr. Morris argues that the trial court erred by not granting him leave to file a successive postconviction petition.

¶ 20    The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a criminal defendant with a mechanism, where he or she can argue that his or her sentence and conviction were the result of a substantial denial of his or her constitutional rights under the United States Constitution, Illinois Constitution, or both. *People v. English*, 2013 IL 112890, ¶ 21. The Act generally contemplates the filing of only one postconviction petition, and any claim not presented in the initial petition is forfeited. 725 ILCS 5/122-1(f) (West 2016); *Allen*, 2019 IL App (1st) 162985, ¶ 29. However, a court may grant a defendant leave to file a successive postconviction petition if he demonstrates cause for failing to raise the claim in his earlier petition and prejudice resulting from that failure. 725 ILCS 5/122-1(f) (West 2016); *Allen*, 2019 IL App (1st) 162985, ¶ 32. Under this cause-and-prejudice test, a defendant must establish *both* cause and prejudice. *Allen*, 2019 IL App (1st) 162985, ¶ 32. " 'Cause' is established when the defendant shows that 'some objective factor external to the defense impeded his ability to raise the claim' in

his original postconviction proceeding." *Allen*, 2019 IL App (1st) 162985, ¶ 32 (quoting *People v. Tenner*, 206 Ill. 2d 381, 393 (2002)). And " '[p]rejudice' is established when the defendant shows that the 'claimed constitutional error so infected his trial that the resulting conviction violated due process.' " *Allen*, 2019 IL App (1st) 162985, ¶ 32 (quoting *Tenner*, 206 Ill. 2d at 393). If the defendant makes a *prima facie* showing of cause and prejudice, the court should grant the defendant leave to file his successive postconviction petition. *People v. Ames*, 2019 IL App (4th) 170569, ¶ 13. This court reviews the denial of a defendant's motion for leave to file a successive postconviction petition *de novo*. *Ames*, 2019 IL App (4th) 170569, ¶ 13.

¶ 21    Insanity is "an affirmative defense when a defendant admits the offense charged but claims that, at the time of the offense, he was insane and therefore lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." *Norskog v. Pfiel*, 197 Ill. 2d 60, 75 (2001). "A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity to appreciate the criminality of his conduct." 720 ILCS 5/6-2(a) (West 2002). "The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct." 720 ILCS 5/6-2(b) (West 2002).

¶ 22    We find that Mr. Morris has not established the prejudice prong of the cause-and-prejudice test. The only affidavit, which included observations of Mr. Morris near the time of the incident, was the one from Ms. Lee, who stated he was "acting strangely" hours before the shooting. However, there are no affidavits about his conduct at the time of the incident. Moreover, Mr. Morris' actions, on the day of the murder, show rational behavior, albeit criminal or antisocial conduct. Mr. Morris hid in a bush waiting for Ms. Morris and Mr. Pearce with a rifle and chased

them after they appeared. By his own admission, he said he came there to scare them not that he heard voices telling him to harm them. After seeing them, he shot Mr. Pearce multiple times. This was after multiple calls to Ms. Watts and Mr. Pearce's brother, threatening to kill both Ms. Morris and Mr. Pearce. After killing Mr. Pearce, he chased after his wife and picked her up and le\\\\d her away until he saw someone and she had an opportunity to escape. When he realized the police were coming, he ran into a nearby apartment and held someone hostage when police cornered him in the apartment. While in the apartment, he admitted that he shot his wife's boyfriend. His actions are consistent with someone who intended to murder a person or people he disliked and then appreciated the criminality of his conduct enough to try to escape from police and avoid arrest. In light of the facts of this case, these affidavits are insufficient to prove that he would have succeeded on an insanity defense claim. It was likely trial strategy that caused his trial attorney to not raise an insanity defense, and instead argue for an extension of the theory of serious provocation. We cannot say that arguing one theory with a zero to low chance of success is a "constitutional error [that] so infected his trial that the resulting conviction violated due process" because it did not argue a theory with a similar likelihood of success.

¶ 23    Mr. Morris threatened to commit the crime weeks before the incident, waited for the victims, and then admitted his crime to multiple individuals. Moreover, the crime was seen by multiple people. The nature of the crime and surrounding circumstances left his counsel with no viable avenues for defense. As a result, we find that Mr. Morris cannot meet the prejudice prong and that the trial court did not err by denying him leave to file a successive postconviction petition.

¶ 24                                          CONCLUSION

¶ 25    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 26   Affirmed.