2021 IL App (1st) 201310-U
Order filed: December 23, 2021

FIRST DISTRICT
FOURTH DIVISION

No. 1-20-1310

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 08 CR 5781 |
| TYREESE CRAWFORD, | ) ) | Honorable Michele M. Pitman, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lampkin and Martin concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The second-stage dismissal of several issues raised in defendant's postconviction petition is affirmed, where those arguments were barred by the doctrine of collateral estoppel; denial of defendant's actual innocence claim following an evidentiary hearing is also affirmed, where the circuit court did not manifestly err in concluding that defendant's new evidence would not probably have changed the result on retrial.

¶ 2     Defendant-appellant, Tyreese Crawford, appeals from the circuit court's order dismissing the majority of his postconviction arguments at the second stage, as well as the order denying his actual innocence claim following an evidentiary hearing. For the following reasons, we affirm.[1]

_____

[1] Portions of this order are taken from our prior disposition of defendant's direct appeal. See *People v. Crawford*, 2013 IL App (1st) 111345-U.

¶ 3    Defendant and his codefendant, Tony Benson, were charged with first degree murder and armed robbery, and were tried in simultaneous but separate jury trials.

¶ 4    The charges against defendant and codefendant stem from the November 4, 2007, shooting death of Johnny Frazier. At trial, Raven Bender, Benson's girlfriend at the time of the incident, testified that she and Frazier had been driving around in a minivan on November 4, 2007, during which time Frazier sold drugs on several occasions. Frazier was the driver. Thereafter, they were joined by defendant and Benson, who wanted to buy some marijuana in Chicago, Illinois. At one point, while Frazier was not in the van, Bender heard defendant say to codefendant: "Don't leave no evidence behind. This * * * dead." Bender saw a black and silver handgun on defendant's lap. After Frazier returned to the van, defendant asked Frazier to take him to Calumet Park, Illinois. Frazier was in the driver's seat, Bender was in the front passenger seat, defendant was in the backseat behind Frazier, and Benson was in the backseat behind Bender. Defendant then directed Frazier to park the van near 126th Street and Winchester Avenue in Calumet Park. Bender then left the van. As she walked away, she looked back to the van which had its interior lights on and observed defendant shoot Frazier in the back of the head. Defendant then ran away. After rummaging through Frazier's pockets, Benson left the van and ran in the same direction as defendant.

¶ 5    Marcus Clemons, who had known Frazier for years, testified that he observed Frazier driving his van in Calumet Park between 10:00 and 10:30 p.m. on November 4, 2007. He confirmed that defendant, codefendant, and Bender were seated in the van as described by Bender.

¶ 6     Police officer Bryant Brooks discovered Frazier slumped over the wheel of the van at about 11:12 p.m., and medical personnel later confirmed Frazier was dead. A police investigator photographed the scene and discovered Frazier's pants pockets had been turned inside out and a

$100 bill was on the floor of the van near the driver's seat. The parties stipulated that a forensic pathologist found Frazier's death was caused by a gunshot wound.

¶ 7 During the police investigation, Detective Anthony Beattie took defendant's videotaped statement which was later presented to the jury at trial. Defendant stated that Frazier drove him, Bender, and Benson from Calumet Park to Chicago on the date in question to purchase some marijuana. Defendant sat behind Bender and Benson sat behind Frazier. After they returned to Calumet Park and as defendant was getting ready to leave the van, Benson pulled up his shirt and defendant saw the handle of a gun. While defendant was opening the door of the van to run away in fear, and while he was still in the van, he heard a shot and then ran away. Defendant never stated that Bender was still in the van prior to the shooting in the video, but physically gestured to her position in the front seat in explaining that he ran when he saw the gun because he did not know if Benson was going to shoot him, Frazier or Bender. Defendant claimed to have no prior knowledge of Benson's intention to shoot Frazier.

¶ 8 Following the presentation of the evidence and closing arguments, the jury received instructions, including an instruction on accountability. The jury retired to deliberate at 4:43 p.m. on Friday, October 29, 2010, and deliberated for over six hours.

¶ 9 During its deliberations, the jury forwarded several notes to the trial court. These included questions regarding: (1) the law as to accountability, (2) a request for a transcript of Bender's testimony, (3) the possibility of the need to return to deliberate on Monday if a verdict could not be reached that day, (4) a request for a "smoke break," and (5) when and how the jurors could obtain needed medication from home. The trial court responded to each question, often by agreement of the parties. After the jury indicated that it had reached a verdict on one of the charges, and once again by agreement of the parties, the trial court advised the jury of the need to continue

to deliberate on the remaining charge. At approximately 11:05 p.m., the jury returned verdicts finding defendant guilty of first degree murder and armed robbery. Benson was also found guilty of the same charges.

¶ 10    Defense counsel filed a motion for a new trial. During the hearing on the motion, defense counsel raised an issue which was not included in defendant's written motion. Specifically, defense counsel noted that the jury's notes and questions revealed it was having trouble reaching unanimous verdicts, and that the jury reached its decision only after being coerced by the trial court's responses to their questions and just "as the bus was pulling up to take them to the hotel" to be sequestered. Defendant's motion was denied, and he was subsequently sentenced to consecutive terms of 40 years' imprisonment on the murder conviction and 6 years' imprisonment on the armed robbery conviction.

¶ 11    On direct appeal, defendant argued that the trial court's comments during jury deliberations coerced the jury into rendering its guilty verdicts. Defendant conceded that this issue had not been properly preserved for appeal with contemporaneous objections at trial and by inclusion in his written posttrial motion, and therefore asked for the issue to be reviewed for plain error. *People v. Crawford*, 2013 IL App (1st) 111345-U, ¶¶ 16-18. After noting that the first step in that analysis is to determine if any error had occurred (*id.*), this court rejected defendant's arguments and concluded: "After reviewing the trial court's comments in response to the jury's notes, under the totality of the circumstances, we find no evidence that the jury was coerced during [its] deliberations to reach its guilty verdicts." *Id.* ¶ 20. We further concluded: "The court was well within its discretion to instruct the jury as it did." *Id.* ¶ 23.

¶ 12    Defendant filed an initial postconviction petition, pursuant to the Post–Conviction Hearing Act (Act) (720 ILCS 5/122–1 *et seq.* (West 2014)), in October 2014, and the operative amended

petition was filed on November 20, 2015. Therein, defendant initially made a claim of actual innocence based on new evidence purportedly showing that it was Benson that killed Frazier. In support of this claim, defendant attached to the petition a letter and affidavits from both Benson and a newly identified witness, Geroise Walker.[2]

¶ 13    In a letter to defendant's mother and in his two affidavits, Benson generally averred that he—and not defendant—shot and killed Frazier because: (1) he was jealous that Frazier had been having a sexual relationship with Benson's girlfriend, Bender, and (2) Frazier had been implicated in the murder of one of Benson's friends. Defendant did not know anything about the plan, was only present because he wanted to buy marijuana, and had left the van by the time Benson shot Frazier. After the murder, Benson and Bender took money from Frazier's pockets and left the scene. Benson later split the money with Bender and had Clemons dispose of the murder weapon. Benson further averred that he had spoken to both Bender and Clemons prior to trial and instructed both to testify that it was defendant who was sitting behind Frazier in the van on the night of the shooting and additionally—in the case of Bender—that it was defendant who shot Frazier. Benson indicated that he had not discussed this matter with defendant, but was finally coming forward to tell the truth because it was "eating me up on the inside" that defendant was being punished for something he did not do.

¶ 14    Defendant's petition also asserted that the jury was coerced to reach a verdict by the trial court's comments and responses to the jury's questions during deliberations, ineffective assistance of trial and appellate counsel to the extent that any of these arguments were waived for not having been properly preserved or previously raised, and cumulative error.

---

[2] Walker's affidavit was not further relied upon by defendant or the circuit court below, and defendant does not rely upon it on appeal. Therefore, we need not address its content on appeal.

¶ 15    The State conceded that defendant's actual innocence claim should proceed to an evidentiary hearing. However, the State moved to dismiss all the other claims on the basis that they fundamentally amounted to a claim that the jury was improperly coerced, a claim that was rejected on direct appeal and was thus barred by the doctrine of *res judicata*. The circuit court agreed, dismissed all but the actual innocence claim, and advanced that claim to an evidentiary hearing.

¶ 16    Prior to the hearing, defendant filed a motion regarding the testimony of one of the State's potential witnesses, Santana McCree. According to the motion, McCree was a convicted murderer incarcerated in the same facility as defendant and intended to testify as an informant at the evidentiary hearing that defendant had communicated to McCree information that undermined defendant's actual innocence claim. Because McCree would purportedly testify pursuant to a "cooperation" agreement whereby the State would "not oppose" a 7-year reduction in McCree's 45-year sentence, defendant's motion asked—pursuant to section 115-21 of the Code of Criminal Procedure of 1963 (Code) (West (2018))—that: (1) he be provided certain disclosures regarding McCree, (2) a reliability hearing be held regarding McCree's testimony, and (3) McCree's proposed testimony be barred due to its unreliability. In the alternative, defendant moved *in limine* to exclude McCree's testimony from the hearing for its purported unreliability.

¶ 17    The State objected, contending that Section 115-21 of the Code did not apply to postconviction proceedings and that any conclusion regarding McCree's reliability and credibility should be determined by the trial court acting as the trier of fact at the evidentiary hearing. The trial court agreed and denied defendant's motion in its entirety.

¶ 18    At the hearing, defendant submitted his videotaped statement to the police into evidence. Defendant also presented Benson as a witness, and he generally testified consistently with the

letters and affidavits attached to defendant's amended petition. He stressed that defendant knew nothing about the planned robbery and murder, and that he and not defendant shot and killed Frazier.

¶ 19    However, he did concede that he had previously lied to the police about the incident and reiterated that he arranged for Bender and Clemons to wrongfully implicate defendant at trial. In addition, there were some inconsistencies between Benson's letter and affidavits and his testimony, and between his testimony and defendant's statements in the videotaped statement. For example, contrary to defendant's videotaped statement that defendant was still in the van when Benson pulled out his gun and when Frazier was shot, in one of his affidavits Benson averred that defendant was outside and eight feet away when Benson shot Frazier. At the hearing, Benson testified that both Bender and defendant were outside the van when he pulled out his gun and shot Frazier.

¶ 20    The State presented McCree's testimony at the hearing, in which he asserted that he was incarcerated in the same facility as defendant and Benson. McCree, who admitted to previously lying to a court and who self-described himself as a "hustler," further claimed that defendant's petition and Benson's confession was nothing more than a plot to have defendant's conviction overturned in order to obtain and split an award for defendant's wrongful conviction. McCree contended that this plot was documented in several "kites," or letters written by defendant and passed along among other prisoners at the facility. Over defendant's objection, these kites were entered into evidence at the hearing.

¶ 21    After initially denying any such agreement, McCree ultimately admitted to having a cooperation agreement with the State with respect to his assistance with this matter. After McCree confirmed that he had cooperated with the State as an informant in several other cases as well,

defendant moved to strike both McCree's testimony and the kites from evidence. The circuit court denied that motion but indicated that it would address the credibility of McCree's testimony and the kites in ruling on the ultimate merits of defendant's claim of actual innocence.

¶ 22    In an oral ruling entered on October 10, 2020, the circuit court rejected defendant's claim of actual innocence and denied his postconviction petition. In so ruling, the circuit court specifically indicated that it did not find McCree very credible and was not relying upon the kites at all in making its decision. Rather, the circuit court framed the issue before it as a question of whether, taking Benson's letter, affidavits, and testimony at the hearing as newly discovered evidence, would that evidence likely change the outcome on retrial. The circuit court concluded that it would not, after noting several inconsistencies between the new evidence and the evidence presented at trial. The circuit court also noted that while the evidence at trial indicated that defendant was the shooter, the jury was also instructed on the law of accountability, that theory was argued by the State, and a jury could believe that Benson was the shooter but also that defendant and Benson acted together. Defendant filed a timely appeal.

¶ 23    On appeal, defendant does not challenge the dismissal of his claims of ineffective assistance of appellate counsel and cumulative error. Instead, defendant first contends that the circuit court erred in dismissing his jury coercion and ineffective assistance of trial counsel claims at the second stage. He then contends that the circuit court improperly denied his actual innocence claim following the evidentiary hearing.

¶ 24    "The Post–Conviction Hearing Act *** provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. [Citations.] A postconviction action is not an appeal from the judgment of conviction, but is a collateral attack

on the trial court proceedings." *People v. Tate*, 2012 IL 112214, ¶ 8. The petition may be dismissed at the first stage if it is frivolous or patently without merit, otherwise it advances to the second stage. 725 ILCS 5/122-5 (West 2018). At the second stage, the defendant must make a substantial showing of a deprivation of constitutional rights or the petition is dismissed. *People v. Dupree*, 2018 IL 122307, ¶ 28. If such a showing is made, the postconviction petition advances to the third stage where the court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2018).

¶ 25    We first address defendant's contention that the circuit court erred in dismissing his jury coercion and ineffective assistance of trial counsel claims pursuant to the doctrine of *res judicata*, where: (1) the issue of jury coercion was decided on direct appeal under a plain error standard, rather than the less deferential abuse of discretion standard, and (2) the issue of ineffective assistance of trial counsel was not raised or decided on direct appeal at all. The State disagrees, contending that because this court explicitly concluded on direct appeal that no jury coercion occurred, neither of these two claims have any merit because they are barred under the doctrines of *res judicata* or law of the case.

¶ 26    At the second stage, " '[t]he inquiry into whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the [postconviction] court to engage in any fact-finding or credibility determinations.' " *Dupree*, 2018 IL 122307, ¶ 29 (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). Rather, at the second stage of proceedings the postconviction court takes "all well-pleaded facts that are not positively rebutted by the trial record" as true. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). Thus, the substantial showing of a constitutional violation that must be made at the second stage is " 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at

an evidentiary hearing, would entitle [defendant] to relief.' " (Emphasis omitted.) *Coleman*, 183 Ill. 2d at 385 (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35).

¶ 27    "At the second stage of postconviction proceedings, the State may file a motion to dismiss the petition." *People v. Graham*, 2012 IL App (1st) 102351, ¶ 31. A petition may be dismissed at the second stage only when the allegations in the petition, liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). However, the "purpose of a postconviction proceeding is to permit inquiry into constitutional issues involved in the original conviction and sentence that were not, and could not have been, adjudicated previously on direct appeal." *People v. English*, 2013 IL 112890, ¶ 22. Therefore, issues raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised, but were not, are forfeited. *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). It is appropriate to dismiss a postconviction petition based on *res judicata* or forfeiture at either the first or second stage. *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005).

¶ 28    A second-stage dismissal of a postconviction petition is reviewed *de novo*. *Coleman*, 183 Ill. 2d 366, 389 (1998). We may affirm a second-stage dismissal "on any basis supported by the record." *People v. Stoecker*, 384 Ill. App. 3d 289, 292 (2008).

¶ 29    As an initial matter, we reject the State's assertion that the law of the case doctrine should apply here. The State is certainly correct that it can rely on this argument for the first time on appeal, as we may affirm the dismissal of defendant's petition on any basis that has support in the record. *People v. Wright*, 2013 IL App (4th) 110822, ¶ 32. However, "the doctrine of the law of the case is inapplicable because that doctrine bars relitigation of an issue already decided in the same case, whereas a postconviction proceeding is a case different from the direct appeal." *Id*. ¶ 29. See also *People v. Tenner*, 206 Ill. 2d 381, 395-96 (2002) (law of the case doctrine found to be

inapplicable where "defendant's second post-conviction petition is not the same case as either that involving his first post-conviction petition or that involving his federal *habeas corpus* petition"). Because this postconviction proceeding is separate and distinct from defendant's direct appeal, law of the case is not the proper doctrine to apply here.

¶ 30    However, we agree with the circuit court and the State that defendant's claims of jury coercion and ineffective assistance of trial counsel claims are barred pursuant to the doctrine of *res judicata*. More specifically, we find them barred by the doctrine of collateral estoppel. *Richter v. Village of Oak Brook*, 2011 IL App (2d) 100114, ¶ 17 ("Collateral estoppel is a branch of *res judicata* that prohibits the relitigation of an issue actually decided in an earlier proceeding between the same parties."). This doctrine applies when a party participates in two separate and consecutive cases arising on *different* causes of action, but some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former case. *Tenner*, 206 Ill. 2d 381, 396. "The collateral estoppel doctrine has three requirements: (1) the court rendered a final judgment in the prior case; (2) the party against whom estoppel is asserted was a party or in privity with a party in the prior case; and (3) the issue decided in the prior case is identical with the one presented in the instant case." *Id*.

¶ 31    Obviously, because we entered a final judgment in defendant's direct appeal and he was a party in that case the first two elements are satisfied here. Thus, application of collateral estoppel here hinges on whether a controlling issue we decided on direct appeal is identical with one presented here. We find that it is.

¶ 32    We begin by addressing defendant's postconviction claim of jury coercion. As noted above, the issue we addressed on direct appeal was whether the jury at defendant's trial was coerced into reaching a verdict by the trial court's comments during their deliberations. *Crawford*,

2013 IL App (1st) 111345-U, ¶ 15. We found that no coercion occurred. *Id.* ¶¶ 19-23. Defendant now raises the exact same argument again in his postconviction jury coercion claim, asking us to reach a different conclusion and thus conclude that there was a substantial denial of his constitutional rights. Pursuant to the doctrine of collateral estoppel, the circuit court properly found that defendant is barred from relitigating this issue. As our supreme court has recognized, a defendant "cannot obtain post-conviction relief merely by rephrasing a claim which was previously addressed on direct appeal." *People v. Enis*, 194 Ill. 2d 361, 379 (2000).

¶ 33    Defendant nevertheless complains that his claim of jury coercion should not be barred because that issue was decided on direct appeal under a plain error standard, rather than the less deferential abuse of discretion standard that should apply in this postconviction proceeding.[3] We disagree.

¶ 34    First, collateral estoppel has been applied to issues raised in postconviction petitions that were previously decided in the context of a plain error analysis. *Enis*, 194 Ill. 2d 361, 379 (2000); *Wright*, 2013 IL App (4th) 110822, ¶ 28-31. Moreover, and as we noted on direct appeal, the "first step in a plain-error analysis is to determine whether a clear or obvious error occurred." *Crawford*, 2013 IL App (1st) 111345-U, ¶ 18, citing *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009). In finding that no such error occurred on direct appeal and that therefore the "plain-error doctrine

---

[3] The plain error doctrine "bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error." *People v. Herron,* 215 Ill. 2d 167, 186 (2005). The plain-error doctrine is applied where "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski,* 225 Ill. 2d 551, 565 (2007). In either circumstance, the burden of persuasion remains with the defendant. *Herron,* 215 Ill. 2d at 182. The first step is to determine whether any error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). In contrast, a trial court abuses its discretion only when its ruling is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court. *People v. Santos*, 211 Ill. 2d 395, 401 (2004).

[did] not apply in this case" (*id*. ¶ 20), this court determined that the trial court's comments to the jury were not improper only after considering "whether, under the totality of the circumstances, the words actually interfered with the jury's deliberations and coerced a guilty verdict" (*id*. ¶ 19, citing *People v. Wilcox*, 407 Ill. App. 3d 151, 163 (2010)). This is the exact standard that would apply regardless of whether the issue had been properly preserved for direct appeal, and the same standard that would apply in these postconviction proceedings.

¶ 35 Lastly, even if we agreed that *in general* there is a meaningful distinction between the search for clear or obvious error where an issue has not been preserved and the search for an abuse of discretion where the issue has been properly preserved, any such distinction is irrelevant here considering our actual analysis on direct appeal. In finding that no jury coercion occurred, we *twice* referenced the trial court's discretion in how to respond to the jury's questions, and repeatedly concluded that "we find *no evidence* that the jury was coerced during [its] deliberations to reach its guilty verdicts" and that "*[n]one* of the responses can be viewed as coercive in nature." (Emphasis added.) *Id*. ¶¶ 20-23. We therefore did not simply find that no clear or obvious error occurred, we found no evidence of any error *at all* in how the trial court exercised its discretion in responding to the jury's questions during deliberations. Application of collateral estoppel to bar relitigating this issue via defendant's postconviction claim of jury coercion was therefore thoroughly appropriate.

¶ 36 Importantly, this conclusion also bars defendant's claim of ineffective assistance of trial counsel. It is axiomatic that such a claim requires defendant to show that his trial counsel's representation fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense (*Strickland v. Washington*, 466 U.S. 668, 678 (1984)), and defendant has the burden of establishing both prongs of the *Strickland* test (*People v. Burks*, 343

Ill. App. 3d 775 (2003)). Here, defendant contends that he was prejudiced by his trial counsel's failure to preserve the jury coercion issue for appeal and ensure that an abuse of discretion standard would apply rather than review for plain error.

¶ 37    As we have already discussed above, however, on direct appeal we found no evidence of any error at all in how the trial court exercised its discretion in responding to the jury's questions during deliberations. Because we have already concluded that defendant suffered no prejudice due to the trial court's comments, "defendant is collaterally estopped from claiming prejudice from trial counsel's failure to preserve the error for review." *Wright*, 2013 IL App (4th) 110822, ¶ 31; *People v. Evans*, 186 Ill. 2d 83, 103 (1999) ("Defendant cannot now argue that trial counsel was ineffective for failing to object to what this court has previously concluded to be nonprejudicial."). Because defendant therefore cannot establish the prejudice prong of the *Strickland* test, his claim of ineffective assistance was also properly dismissed at the second stage.

¶ 38    We next address defendant's argument that his actual innocence claim was improperly denied because the circuit court: (1) erred by allowing McCree's testimony and the kites into evidence at the hearing, (2) applied the wrong legal standard, (3) misconstrued certain evidence, and (4) manifestly erred in concluding that defendant's new evidence would not likely have changed the result on retrial.

¶ 39    At a third-stage evidentiary hearing, the defendant must show, by a preponderance of the evidence, a substantial violation of a constitutional right. *People v. Coleman*, 2013 IL 113307, ¶ 92. The circuit court, serving as the finder of fact at the third stage, must determine witness credibility, weigh the testimony and evidence, and resolve any evidentiary conflicts. *Domagala*, 2013 IL 113688, ¶ 34, "Following a third-stage evidentiary hearing where fact-finding and credibility determinations are made, the circuit court's decision will not be reversed unless it is

manifestly erroneous." *People v. Logan*, 2011 IL App (1st) 093582, ¶ 30. "Manifest error is error that is 'clearly evident, plain and indisputable.' " *People v. Beaman*, 229 Ill. 2d 56, 73 (2008) (quoting *People v. Morgan*, 212 Ill. 2d 148, 155 (2004)). This deferential standard of review reflects the understanding that the circuit court is in the best position to observe and weigh the credibility of the witnesses. *Coleman*, 183 Ill. 2d 366, 384–85 (1998).

¶ 40    Our supreme court recently summarized the standards applicable to a claim of actual innocence as follows:

> "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial. [Citations.] Newly discovered evidence is evidence that was discovered after trial and that the petitioner could not have discovered earlier through the exercise of due diligence. [Citation.] Evidence is material if it is relevant and probative of the petitioner's innocence. [Citation.] Noncumulative evidence adds to the information that the fact finder heard at trial. [Citation.] Lastly, the conclusive character element refers to evidence that, when considered along with the trial evidence, would probably lead to a different result. [Citation.] The conclusive character of the new evidence is the most important element of an actual innocence claim. [Citation.]
>
> Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt. [Citation.] The new evidence need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *People v. Robinson*, 2020 IL 123849, ¶¶ 47-

48.

¶ 41    Before turning to a discussion of the ultimate merits of defendant's actual innocence claim, we must first address two preliminary issues. First, defendant contends on appeal that the circuit court erred by refusing to hold a reliability hearing regarding McCree's testimony, by allowing him to testify at the hearing, and by denying defendant's motion to strike that testimony and the kites from the evidence at the hearing. However, asserting that the circuit court did not credit either McCree's testimony or the kites below, defendant contends that we need not address these errors unless the State and/or this court seek to rely on that evidence to affirm the circuit court's ultimate decision to deny his actual innocence claim.

¶ 42    The State does indeed seek to rely on that evidence in its brief, noting that while the circuit court did explicitly state it was not relying on the kites, it only found that McCree was not "credible much before this Court" and indicated that as such it would give his testimony the "proper weight." As such, the State contends that McCree's testimony "while not given great weight by the circuit court, was still granted some credence" and may therefore be relied upon to affirm the circuit court's rejection of defendant's claim of actual innocence.

¶ 43    We need not further address defendant's objections to McCree's testimony and the introduction of the kites into evidence, nor the possible significance of that evidence on appeal, because the issue is moot. "A moot question is one that existed but because of the happening of certain events has ceased to exist and no longer presents an actual controversy over the interest or rights of the party." *In re Nancy A.*, 344 Ill. App. 3d 540, 548 (2003). Courts of review will not decide moot or abstract questions, will not review cases merely to establish precedent, and will not render advisory opinions. *Peach v. McGovern*, 2019 IL 123156, ¶ 64. Nor do courts in Illinois consider issues where the result will not be affected regardless of how those issues are decided.

*Id.*; *In re Alfred H.H.*, 233 Ill. 2d 345, 351 (2009).

¶ 44    Here, it is undisputed that the circuit court gave absolutely no weight to the kites in rejecting defendant's actual innocence claim, and clearly gave little to no weight to McCree's testimony. Moreover, other than its comments as to credibility, neither McCree's testimony nor the kites factored into the circuit court's substantive analysis of the actual innocence claim. We note again that the circuit court framed the issue before it as a question of whether, taking Benson's letter, affidavits, and testimony at the hearing as newly discovered evidence, would that evidence likely change the outcome on retrial. It is therefore apparent from the record that neither McCree's testimony nor the kites played any role in the circuit court's rejection of defendant's actual innocence claim. Furthermore, as discussed more fully below we need not rely on any of this evidence to affirm the circuit court's decision, and thus the ultimate result of this appeal would not be affected regardless of how these issues were decided below. As such, any possible error with respect to the introduction of this evidence at the evidentiary hearing is moot.

¶ 45    As to the second preliminary issue, defendant contends that this matter must be remanded for a new evidentiary hearing because the circuit court applied the wrong standard as to the conclusive character element of his actual innocence claim. Defendant specifically notes that the correct standard was set forth in *Robinson*, 2020 IL 123849, ¶¶ 47-48, 55, in which our supreme court rejected a "standard that requires evidence of total vindication or exoneration to support a claim of actual innocence" and instead concluded that the "new evidence need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence."

¶ 46    As evidence that the wrong standard was utilized here, defendant notes: (1) the State argued

below that defendant had to show "total vindication and exoneration," (2) the circuit court cited *People v. Collier*, 387 Ill. App. 3d 630, 636 (2008), a case specifically rejected in the *Robinson* decision for applying the incorrect standard, and (3) in ruling against defendant, the circuit court specifically faulted him for failing to show that the new evidence "would change the outcome of the trial on retrial" rather than "probably" change the result. While defendant acknowledges that the circuit court did not "explicitly invoke the 'total vindication' standard," he contends that the above facts "suggest[] that it applied the incorrect legal standard." We disagree.

¶ 47 First, while the State may have asked for an improper standard to be applied, the record also shows that defense counsel cited the correct standard to the circuit court during argument below. Second, while the circuit court did cite to the *Collier* decision in discussing the appropriate standard to apply, in the very same paragraph discussing that standard the circuit court properly recognized that defendant's new evidence "must be so conclusive that it would *likely or probably* change the result on the trial." (Emphasis added.) Finally, while the circuit court did at one point fault defendant for failing to show that the new evidence "would change the outcome of the trial on retrial," we find from the record as a whole that this was simply a slight misstatement of the correct standard the circuit court itself had already identified.

¶ 48 Indeed, defendant himself acknowledges that he is relying upon a purported suggestion that the incorrect legal standard was applied. However, a trial court is presumed to know the law and follow it properly, and that presumption is only overcome by a "strong affirmative showing to the contrary in the record." *People v. Groebe*, 2019 IL App (1st) 180503, ¶ 62. Here, we find no such affirmative showing in the record before us.

¶ 49 Having addressed these two preliminary issues, we may now turn to the substantive merits of the circuit court's denial of defendant's claim of actual innocence. Even assuming defendant

presented new, material, noncumulative evidence, we find that the circuit court did not manifestly err in concluding that the evidence was not sufficient, when considered along with the trial evidence, to probably or likely lead to a different result on retrial.

¶ 50    In so ruling, we reject several specific arguments raised by defendant on appeal. We begin by addressing defendant's challenge to the circuit court's reliance on two specific inconsistencies between defendant's videotaped statement and Benson's testimony in finding that Benson's testimony was not credible, did not corroborate defendant's statement, and therefore did not support his claim of actual innocence. Defendant contends these two instances were either the result of the circuit court misconstruing the evidence or amounted to no more than immaterial, minor inconsistencies that did not significantly impeach Benson's testimony. We disagree.

¶ 51    Defendant notes that the circuit court found Benson incredible, in part, because: (1) while Benson testified that he never showed defendant his gun or told defendant he had a gun and intended to shoot Frazier, in his statement defendant stated he saw Benson's gun before exiting the van, and (2) while defendant stated that he was still in the van at the time of the shooting, and indicated that Bender was as well, Benson testified that defendant and Bender got out of the van before he pulled out the gun and shot Frazier. While defendant first contends that this recitation misconstrues the evidence, a review of the record reveals that it does not.

¶ 52    Indeed, Benson specifically testified that he *never* told defendant he had a gun and intended to shoot Frazier or showed defendant a gun on the day of the shooting. In contrast, defendant specifically told the police that he saw Benson's gun, and that is the reason he got out of the van and ran away. Furthermore, defendant specifically stated that he was in the van at the time of the shooting and indicated that Bender was as well. In contrast, Benson twice testified that defendant and Bender exited the van *before* he pulled out the gun and shot Frazier. First, Benson testified:

"Tyrese was like, man, let me out, let me get out of the car. When he got out of the car, Bender got out as well. I pulled out the gun and shot him in the head." He thereafter described the course of events again, stating: "[Frazier] stopped the van. Tyrese got out. He just got out. Raven got out as well. I pulled a gun out, and I shot him in the head." The circuit court did not misconstrue this evidence.

¶ 53    Nor were these merely minor inconsistencies. Defendant essentially stated that he knew nothing of Benson's plan, saw the gun, and then exited the van and ran out of fear. In contrast, Benson testified that defendant and Bender got out of the van for no apparent reason after they had all driven around for hours and just before Benson shot Frazier. As such, the circuit court correctly recognized that Benson's testimony did not corroborate defendant's rendition of events on this key issue.

¶ 54    The circuit court also correctly noted that defendant was tried on the alternative theory of accountability, and that would also be the case upon retrial. The circuit court essentially concluded that Benson's rendition of events—where defendant exited the vehicle *before* Benson pulled out the gun and shot Frazier—could suggest that defendant knew exactly what was about to happen and thus both impeach Benson's own testimony to the contrary and provide significant support for a conviction of defendant on a theory of accountability upon retrial. We agree.

¶ 55    Furthermore, we also reject defendant's contention that the circuit court erred in finding that Benson's testimony was discredited by the tension between Clemon's trial testimony that defendant was seated behind Frazier just before the shooting and Benson's testimony that defendant was seated behind Bender. Defendant contends that Clemons only testified as he did because Clemons was involved in disposing of the murder weapon and complied with Benson's instruction that he lie to the jury about defendant's location in the van. Defendant then asserts that

if a jury heard Benson's testimony it would not credit Clemon's testimony because "it would have known that Clemons was lying and would have known why he was lying."

¶ 56    Obviously, this argument presupposes the credibility of Benson's testimony. However, the circuit court clearly and specifically found Benson to be wholly lacking in credibility, and contrary to defendant's contentions to the contrary on appeal this finding was based upon more than the inconsistencies discussed above. Indeed, the circuit court also specifically noted that Benson himself admitted to lying to the police prior to trial and Benson himself testified that he successfully managed to arrange for both Clemons and Bender to provide false testimony at trial. On this record, the circuit court's conclusion that Benson lacked any credibility cannot be viewed as an error so clearly evident, plain and indisputable that we should reverse that finding for manifest error. *Morgan*, 212 Ill. 2d at 155.

¶ 57    Lastly, we reiterate that in rejecting defendant's actual innocence claim the circuit court stressed that in addition to being tried on a theory that defendant was the shooter, the State had also proceeded on the alternative theory of accountability and that it was entirely possible that the jury believed that Benson was the shooter but that he and defendant had in fact been operating together in the robbery and murder. The same theory would be presented to the jury on retrial. As discussed above, the circuit court correctly concluded that the portion of Benson's testimony regarding defendant and Bender leaving the van just before Benson shot Frazier—suggesting they knew exactly what was about to happen—could provide significant additional support for that alternative theory on retrial. While defendant contends that Benson's testimony "that he—not Crawford—committed this crime and that Crawford had no idea what Benson planned creates a probability of a different outcome" even under a theory of accountability, this argument once again presupposes credibility that the circuit court specifically found Benson did not have.

¶ 58    Moreover, defendant's overall argument rests on Benson's testimony that he shot Frazier *and* that defendant knew nothing of Benson's plan, contending that this evidence was so conclusive that it was likely to alter the result on retrial. However, it is settled that a trier of fact may believe as much, or as little, of any witness's testimony as it sees fit. *People v. Tabb*, 374 Ill. App. 3d 680, 692 (2007). The circuit court properly recognized that the jury could have believed that Benson shot Frazier at trial, while also finding that he and defendant acted together. The same would be true on retrial, and defendant's arguments on appeal fail to adequately account for the impact this has on the circuit court's conclusion that he failed to show a likelihood of a different outcome on retrial resulting from his newly presented evidence. The circuit court's conclusion that defendant failed to establish his actual innocence claim by a preponderance of the evidence was not manifestly erroneous.

¶ 59    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 60    Affirmed.