2020 IL App (2d) 190415-U
No. 2-19-0415
Order filed May 7, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 99-CF-1675 |
| DEWAYNE L. WESTER, | ) ) | Honorable George Bridges and Patricia S. Fix, |
| Defendant-Appellant. | ) | Judges, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Presiding Justice Birkett and Justice Brennan concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court properly denied defendant leave to file a second successive postconviction petition. Affirmed.

¶ 2    Almost 20 years ago, defendant, Dewayne L. Wester, was convicted of first-degree murder (720 ILCS 5/9-1(a)(1) (West 1998)) and sentenced to 45 years' imprisonment. This is his seventh appeal.[1] Presently, defendant appeals the trial court's denial of his request for leave to file a second

---

[1] Our prior resolutions of defendant's appeals: (1) *People v. Wester*, 2018 IL App (2d)

successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2014)).  For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4      A detailed recitation of the facts at trial and the procedural history of this case may be found in our prior decisions.  For purposes of this appeal, we note, in sum, that the trial evidence reflected that, after confronting him about a drug debt, defendant shot Brian Blanchard multiple

_____

150768-U (denying defendant leave to file a successive postconviction petition); (2) *People v. Wester*, 2015 IL App (2d) 140732-U (affirming the denial of defendant's *pro se* petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2012)) as untimely and unmeritorious); (3) *People v. Wester*, 2013 IL App (2d) 111085-U (third-stage denial of the postconviction petition, which had raised claims of ineffective-assistance of counsel and challenged the State's presentation of rebuttal witnesses, affirmed; $750 public defender reimbursement fee vacated); (4) *People v. Wester*, 2-06-0097 (2007) (unpublished order under Supreme Court Rule 23(c)) (second-stage dismissal of postconviction petition vacated based on postconviction counsel's  failure to comply with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984)); cause remanded for the trial court to hear defendant's motion for substitution of counsel); (5) *People v. Wester*, No. 2-03-0864 (2004) (unpublished summary order under Supreme Court Rule 23(c)) (first-stage dismissal of postconviction petition reversed and remanded); and (6) *People v. Wester*, No. 2-01-0204 (2002) (unpublished order under Supreme Court Rule 23(c)) (on direct appeal, holding that the evidence was sufficient to convict for first-degree murder, trial counsel was not ineffective for failing to tender a second-degree murder instruction, and the trial court did not consider improper sentencing factors).

times. Eyewitnesses saw defendant initiate the confrontation and shoot Blanchard, but defendant testified that his actions constituted self-defense.

¶ 5    In part, the jury received instructions concerning: (1) first-degree murder, involuntary manslaughter, and self-defense; (2) intentional and reckless acts; and (3) the definition of "knowledge," in accordance with No. 5.01B (paragraph 2) of Illinois Pattern Jury Instructions, Criminal (4th ed. 2000) (IPI Criminal 4th) (that a person acts with *knowledge* of the result of his or her conduct "when he [or she] is consciously aware that the result is practically certain to be caused by his [or her] conduct"). During deliberations, the jury asked two questions, seeking the definition of the terms "likely" and "strong probability," as used in the first-degree murder and manslaughter instructions. As noted in our most recent decision, *Wester*, 2018 IL App (2d) 150768-U, ¶ 9 ("*Wester VI*"), before instructing the jury that there were no legal definitions for those terms, trial counsel requested that defendant be brought into court from the holding cell, discussed the issue and proposed response with him, and reported that defendant approved of the court's answer.

¶ 6    On direct appeal, defendant argued that he was denied effective assistance at trial, where counsel failed to tender a second-degree murder instruction and, further, that his own agreement with that decision was based upon faulty advice of counsel. This court recited the transcript exchange between the court, trial counsel, and defendant concerning his choice to not tender the second-degree murder instruction, and then held the following:

"Based on the foregoing exchange, it is clear that defendant and his counsel discussed the matter of a second[-]degree murder instruction as opposed to an involuntary manslaughter instruction and that defendant chose not to have the jury receive the former

instruction. In keeping with defendant's decision, defense counsel tendered an involuntary manslaughter instruction but not a second[-]degree murder instruction.

We agree with the State that, although defendant claims that his decision to require an involuntary manslaughter instruction rather than a second[-]degree murder instruction was based upon the 'faulty advice of counsel,' no evidence appears in the record as to the substance of the advice defense counsel provided. Without any evidence in the record to substantiate defendant's claim that his choice of instruction was based on faulty advice, his claim must be considered speculative and fail. A defendant cannot rely on speculation or conjuncture to justify a claim of incompetent representation. *People v. Pecoraro*, 175 Ill. 2d 294, 323 (1997).

We conclude that defendant cannot now complain that his counsel was ineffective for failing to tender a second[-]degree murder instruction when it was defendant's decision to submit such an instruction, and he chose not to do so. At any rate, *defendant has not shown that there was a reasonable probability that the verdict would have been different if the instruction had been given*. As noted in our discussion above, the evidence overwhelmingly established that the defendant was the aggressor in the altercation with Blanchard and that defendant was not in imminent danger of death or great bodily harm when he shot Blanchard. Consequently, *the evidence did not support a conclusion that defendant acted unreasonably in self[-]defense*. Accordingly, defendant has failed to establish ineffective counsel." (Emphasis added.) *Wester*, No. 2-01-0204 (2002) (unpublished order under Supreme Court Rule 23(c)).

¶ 7    Thereafter, defendant hired private counsel, Gregory C. Nikitas, to represent him in earlier postconviction proceedings. As we previously recounted in *Wester VI*:

"Nikitas amended the postconviction petition, adding paragraph 29: '[Trial counsel] should have requested the court provide legal definitions for mental states when the jurors raised that question during their deliberations. This was the central inquiry for the jurors and undoubtedly it affected [their] verdict.' At the start of the evidentiary hearing, Nikitas stated that he was withdrawing paragraph 29. Then, he clarified that he was withdrawing only that portion that alleged that trial counsel did not provide legal definitions for mental states. He acknowledged that trial counsel introduced instructions on mental states, such as knowingly and (un)intentionally. Rather, he challenged that, after the jury asked the question about the definitions of 'strong probability' and 'likely,' *a more substantive response should have been given*." (Emphasis added.) *Wester VI*, 2018 IL App (2d) 150768-U, ¶ 12.

¶ 8 Indeed, this court noted that defendant's arguments in *Wester VI* were: "ineffective assistance based on trial counsel's handling of the jury's request to define 'strong probability' and 'likely' and unreasonable assistance of postconviction counsel based on counsel's handling of the issue. Specifically, defendant argued that, after the jury asked about the difference between the phrases 'strong probability' in the first-degree-murder instruction and 'likely' in the involuntary-manslaughter instruction, trial counsel should have requested that the jury be provided with a second definition of 'knowledge.'" *Id.* ¶ 17.

¶ 9 In the *pro se* second successive postconviction petition presently at issue, defendant argues that initial postconviction proceedings were fundamentally flawed. In sum, he contends that postconviction appellate counsel erred in failing to raise on appeal specifically that, in response to the jury's questions seeking definitions of the terms "likely" and "strong probability," his trial counsel should have submitted a *second* definition of "knowledge," *i.e.*, that found in paragraph 1

of IPI Criminal 4th No. 5.01B (which, in sum, provides that a person acts knowingly with regard to the nature or attendant circumstances of his or her conduct when consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that such facts exist). Further, he submits that appellate counsel should have raised this claim on direct appeal and that Nikitas violated Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) and provided unreasonable assistance when he removed this claim from his amended postconviction petition. Collectively, defendant asserts that the foregoing establishes cause for not raising this claim earlier.

¶ 10    In addition, defendant argues that trial counsel should have submitted a jury instruction for second-degree murder and that his own choice to forego that instruction was based on the "faulty advice of counsel."

¶ 11    On February 1, 2019, the trial court issued a written order, denying defendant leave to file the second successive postconviction petition. The court first found that no objective factor impeded defendant's ability to raise a specific claim during the original postconviction proceedings. Further, it found that defendant did not demonstrate any prejudice from the claims not being raised in initial postconviction proceedings. The court concluded that, as defendant failed to establish either cause or prejudice to file a successive petition, nor raised an actual-innocence claim, leave to file the petition must be denied.

¶ 12    Defendant sought leave to file an amended petition and to reconsider the denial of leave to file the second petition. On March 5, 2019, denied both the motion for reconsideration and for leave to file the amended version of the second petition, which it characterized as a request for leave to file a third successive postconviction petition. In addition, the court imposed upon defendant a $90 sanction for filing a third request to file a successive petition.

¶ 13    On March 18, 2019, defendant filed two *pro se* pleadings. The first was a motion to reconsider the imposition of sanctions. The second was a notice of appeal, specifying as the judgments being appealed the orders of the circuit court denying his second, and what the court had characterized as a third, motion for leave to file a successive petition for postconviction relief, as well as the order for sanctions.

¶ 14    On March 20, 2019, the trial court directed that the timely notice of appeal be held in abeyance until the resolution of the motion for reconsideration of the sanctions. On May 17, 2019, the trial court denied the motion to reconsider the imposition of sanctions. Further, the court directed the circuit clerk to prepare a notice of appeal and appointed the Office of the State Appellate Defender (OSAD) to represent defendant on appeal.

¶ 15    Thereafter, a notice of appeal was filed with this court on May 17, 2019. Upon motion, this court noted that the scope of this appeal concerns the trial court's orders of February 1, March 5 and May 17, 2019. In addition, as defendant wished to represent himself, this court allowed OSAD's motion to withdraw.

¶ 16                                II. ANALYSIS

¶ 17    Defendant challenges on appeal the court's denial of leave to file a second successive postconviction petition. He raises no argument concerning the order for sanctions and, therefore, we deem that claim forfeited. See Ill. Sup. Ct. R. 341(h)(7) (eff. May 25, 2018) (points not argued are forfeited).

¶ 18    The Act contemplates the filing of only one postconviction petition, and any claim absent from the original petition is deemed forfeited. *People v. Tenner*, 206 Ill. 2d 381, 392 (2002). Further, a ruling on a postconviction petition has *res judicata* effect with respect to all claims that were raised or could have been raised in the initial petition. *People v. Flores*, 153 Ill. 2d 264, 274

(1992). Similarly, any issues raised that were decided on direct appeal are barred by *res judicata*, and any issues that could have been raised on direct appeal, but were not, are forfeited. *Tenner*, 206 Ill. 2d at 392.

¶ 19 Accordingly, to avoid the consequences of *res judicata* and forfeiture, a defendant must first obtain leave of court before filing a successive postconviction petition. Leave of court may be granted when one of two exceptions is satisfied, only one of which is relevant here. Specifically, the "cause-and-prejudice" exception, as codified, provides:

"(f) Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122-1(f) (West 2018); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 459 (2002).

¶ 20 The cause-and-prejudice exception requires a defendant to meet "a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act [725 ILCS 5/122-2.1(a)(2) (West 2012)]." *People v. Smith*, 2014 IL 115946, ¶ 35. It does not, however, contemplate proof akin to that which would be presented at an evidentiary hearing. *Id.* at ¶ 29. We review *de novo* denial of leave to file a successive postconviction petition. *People v. Bailey*, 2017 IL 121450, ¶ 13.

¶ 21    As explained above, a cause-and-prejudice analysis presumes that a defendant has *not* yet raised the issue he or she seeks to raise in the successive postconviction petition, as those issues will be barred by *res judicata*.  That is certainly not the case here with respect to either of defendant's primary claims.  First, as to trial counsel's response to the jury's questions, the adequacy of the instructions it received, and/or the manner in which those claims were raised in prior appeals, in *Wester VI*, we rejected defendant's claims on this issue, noting that they appeared to have been addressed earlier but, at a minimum, he still failed to establish both cause and prejudice.  *Wester VI*, 2018 IL App (2d) 150768-U, ¶¶ 27-35.  At best, defendant's arguments here constitute only slightly different iterations of his prior arguments that were previously addressed and rejected.  Defendant nevertheless claims they are different in fact and substance, because he now raises questions concerning the "professionalism" of trial counsel, as well as errors committed by the trial court for not providing the jury *both* definitions of the "knowledge instructions" and further guidance once it demonstrated that it was confused.  This changes nothing.  As we previously explained, postconviction counsel revised defendant's argument about the instructions, but the underlying challenge to them remained (*id.* ¶ 12) and, in any event, ineffective-assistance claims require a showing of prejudice, which (as we previously noted, *id.* ¶ 31) defendant cannot establish here because the alleged constitutional error cannot be said to have deprived him of due process.  To the extent that defendant is arguing that the jury was not fully instructed on the definition of knowledge, defendant, again, cannot establish prejudice.  As we have already explained, the two paragraphs of IPI Criminal 4th No. 5.01B are acceptable *alternatives* for defining knowledge (*id.* ¶ 18) and, even if defendant were correct that both definitions should be given when conduct and result are at issue and even assuming that was the case here, the jury here expressed no confusion about the definition of knowledge, which again distinguishes this case

from those upon which defendant relies. See *id*. ¶ 32 (distinguishing *People v. Lowry*, 354 Ill. App. 3d 760,762 (2004); *People v. Lovelace*, 251 Ill. App. 3d 607, 619 (1993); *People v. Brouder*, 168 Ill. App. 3d 938,948 (1988), on the basis that, in those cases, the juries asked for the definition of "knowingly" and expressed confusion over the term). Defendant may not avoid the bar of *res judicata* by re-raising previously-addressed issues with only slight variations. See, *e.g.*, *People v. Simms*, 192 Ill. 2d 348, 360 (2000). No matter how defendant cloaks them, these are the same underlying issues previously raised and resolved.

¶ 22    Defendant's second claim, concerning a second-degree murder instruction, fares no better. Defendant acknowledges that this claim was addressed on direct appeal and in the evidentiary hearing held on his initial postconviction petition. However, he argues that counsel's testimony at the hearing on his initial postconviction petition supported his argument, which we previously commented concerned off-the-record allegations, that his decision to not tender a second-degree murder instruction was based on counsel's faulty advice. Defendant points out that counsel testified that he recalled arguing for the self-defense instruction and that the court was not going to allow it, but he could not recall if the court changed its mind, and, further, that, while he discussed the general nature of the instructions with defendant, he did not recall going over them word-for-word. Thus, defendant contends, counsel's testimony reflects that he was not properly advised regarding the distinction between the self-defense and second-degree murder instructions, as well as the appropriate mental states associated therewith. Defendant argues that Nikitas's examination of trial counsel did not bring to the court's attention that counsel's testimony directly related to defendant's claim that his decision to not tender a second-degree murder instruction was based on faulty advice of counsel; therefore, he argues, Nikitas failed to properly present his claims to the court. He continues that appellate counsel then virtually abandoned his claims on appeal of

the postconviction petition, instead raising an issue that had not been previously raised, and, so, this court did not consider whether trial counsel provided inadequate advice on tendering a second-degree murder instruction. See *People v. Wester*, 2013 IL App (2d) 11085-U, ¶¶ 28-39.

¶ 23    Although defendant claims that he may raise the "faulty advice of counsel" argument because this court, on direct appeal, noted that the argument concerned matters outside the record, he fails to note that this court also continued that, even if it had been given, the second-degree murder instruction would not have altered the outcome. *Wester*, No. 2-01-0204 (2002) (unpublished order under Supreme Court Rule 23). Further, after Nikitas explored this claim when examining trial counsel at the postconviction hearing, the trial court rejected the claim both as barred by *res judicata* (because it had been raised on direct appeal) and because it found credible trial counsel's testimony regarding the nature of his conversations with defendant about the instructions, which, in turn, reflected that defendant did not *want* the second-degree murder instruction, preferring instead to submit only involuntary manslaughter. On appeal, defendant did not challenge those findings or make any argument involving the second-degree murder instruction. Although defendant argues that the failure to challenge the court's finding on appeal cannot be attributed to him, because appointed counsel made that decision, it nevertheless remains that, no matter how re-crafts it now, the crux of the second-degree murder-instruction claim has already been considered, rejected, and is barred by *res judicata*.

¶ 24    In sum, the trial court did not err in denying defendant leave to file a second successive postconviction petition.

¶ 25                               III. CONCLUSION

¶ 26    For the reasons stated, the judgment of the circuit court of Lake County is affirmed.

¶ 27    Affirmed.