2022 IL App (2d) 210473-U
No. 2-21-0473
Order filed July 29, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 99-CF-1675 |
| DeWAYNE WESTER, | ) ) | Honorable Patricia S. Fix, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Birkett and Brennan concurred in the judgment.

**ORDER**

¶ 1  *Held*:  We grant the appellate defender's motion to withdraw because there is no arguably meritorious basis for an appeal.

¶ 2  Defendant, DeWayne Wester, appeals the dismissal of his motion for leave to file his fourth successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). This appeal is defendant's eighth. The Office of the State Appellate Defender (OSAD) has moved to withdraw as counsel on appeal. For the reasons that follow, we allow counsel to withdraw and affirm the judgment of the circuit court of Lake County.

¶ 3                           I. BACKGROUND

¶ 4　　In 2000, defendant was tried before a jury for first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 1998)). The court gave the jury instructions on first-degree murder and involuntary manslaughter (*id.* § 9-3). The State's theory was that defendant shot the victim, Brian Blanchard, after initiating a confrontation with Blanchard over a drug debt. Eyewitnesses saw defendant initiate the confrontation and shoot Blanchard. The cause of Blanchard's death was massive bleeding from a gunshot wound to the abdomen.

¶ 5　　Before trial, the State moved to prohibit evidence of Blanchard's prior bad acts. The trial court ruled that it would allow the prior-acts evidence if there was sufficient evidence of self-defense. After the State rested, defense counsel argued that there was sufficient evidence of self-defense to allow admission of Blanchard's prior conviction of reckless discharge of a firearm. After hearing extensive arguments from the parties, the court disagreed, stating: "At this stage I am not seeing any evidence of self-defense at all." The court also stated: "I will not give a self-defense instruction if you rest right now."

¶ 6　　Defendant then testified, claiming that he acted in self-defense during a confrontation with Blanchard over stolen gambling money. Defendant alleged that he, Blanchard, and several men from the neighborhood were gambling with dice when Blanchard stole his winnings. When he tried to take back the money, Blanchard began punching him. The punches disoriented defendant, and Blanchard continued to attack. Defendant shot his gun multiple times at the ground to stop Blanchard's attack, and he did not intend to hit Blanchard.

¶ 7　　In rebuttal, several witnesses with whom defendant claimed to have been playing dice denied that they were playing dice that day.

¶ 8    Following defendant's testimony, the trial court stated: "I believe there is sufficient evidence for the defense to offer a self-defense [*sic*] to the jury and over the State's object [*sic*] I will allow that. So in preparation of the instructions they should be prepared accordingly."

¶ 9    The court instructed the jury on first-degree murder, involuntary manslaughter, and self-defense. The jury found defendant guilty of first-degree murder (*id.* § 9-1(a)(1)), and the court sentenced him to 45 years in prison.

¶ 10    On direct appeal, defendant, represented by a different attorney, argued that (1) the evidence was insufficient, (2) trial counsel was ineffective for failing to tender a second-degree murder instruction, and (3) the trial court considered improper sentencing factors. We affirmed defendant's conviction and sentence. *People v. Wester*, No. 2-01-0204 (2002) (unpublished order under Supreme Court Rule 23).

¶ 11    In 2003, defendant filed a *pro se* postconviction petition under the Act, claiming that his constitutional rights were violated when (1) the trial court allowed a certain witness to testify, (2) the jury was allowed to see certain victim photographs, and (3) appellate counsel failed to raise the foregoing issues. One judge found that defendant stated the gist of a constitutional claim and appointed the public defender; however, a successor judge summarily dismissed the petition. Defendant appealed. We reversed and remanded. See *People v. Wester*, No. 2-03-0864 (2004) (unpublished summary order under Supreme Court Rule 23(c)).

¶ 12    On remand, appointed counsel filed a supplemental postconviction petition and later amended it. The trial court granted the State's motion to dismiss the amended petition, and defendant appealed. We vacated and remanded because counsel failed to comply with Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984). *People v. Wester*, No. 2-06-0097 (2007) (unpublished order under Supreme Court Rule 23).

¶ 13    In November 2009, a different public defender filed an amended supplemental petition for postconviction relief. Subsequently, private counsel Gregory C. Nikitas appeared for defendant and filed yet another amended supplemental petition. In that petition, defendant challenged the admission of particular rebuttal testimony and photographs. Defendant also alleged that trial counsel was ineffective (1) in advising defendant about jury instructions on involuntary manslaughter and second-degree murder, (2) in failing to call particular witnesses, and (3) in failing to suggest a specific response to a jury question. Finally, defendant argued that appellate counsel was ineffective for failing to raise the issue regarding the admission of rebuttal testimony.

¶ 14    The State filed a motion to dismiss the petition, which the trial court denied.

¶ 15    The trial court held an evidentiary hearing, at which trial counsel testified. At the outset, trial counsel indicated that he did not have "an opportunity to review anything from [defendant's case] since the original trial." Trial counsel testified regarding his conversations with defendant about jury instructions. He stated: "I remember talking with [defendant] about the different options, self-defense as an argument, and second[-]degree instructions as an argument. I remember him specifically bringing up the issue of involuntary manslaughter with me." He stated: "Early on [defendant] indicated this was a case of self-defense or involuntary manslaughter." Trial counsel stated that he "[o]bviously *** kept reminding [defendant] of the possibility of a second[-]degree instruction and offering that." The following colloquy occurred:

        "Q. You mentioned involuntary and self-defense, you also mentioned second degree, what was the nature and extent of the conversations you had with [defendant] with regard to an instruction on second degree murder?

        A. The conversations that we had basically surrounded whether or not we should offer a second[-]degree instruction. Obviously he was more the act itself being a reckless

act and going for involuntary as opposed to going to a reasonable belief in self-defense. Just the nature of what happened, discharging of a firearm as he was heading—running away from the victim, *** and the—basically the conversation we had should—obviously we would ask the Court for a self-defense instruction.

Ultimately I think the Court denied the self-defense instruction, the involuntary, the Court was inclined to go with involuntary and let us offer that, but when I would discuss it with [defendant], my position was that we should offer both second degree and involuntary. I obviously would ask for the self-defense and would ask for the involuntary, that was my discussions with him."

Trial counsel was also asked whether he "went over specific language of jury instructions" with defendant, and the following transpired:

"A. You are asking me if I read specifically what the jury instructions stated to him, I don't believe I did that, but I talked to him about the general nature of the jury instructions.

Q. At that point in your career you had extensive knowledge of what those jury instructions were and the language, so you didn't necessarily have to rely on physical copies of the jury instructions themselves, correct?

A. I had reviewed the jury instructions obviously before I discussed it with him. I had been involved in a number of trials in the past, a couple of murder trials prior to that so I knew what the second[-]degree murder instructions were about and obviously what the involuntary instructions were about. I discussed with him the general language, not word for word."

Trial counsel was then asked whether in "[his] recollection it was after [defendant] testified, the Court took a different view regarding the self-defense issue and allowed the self-defense instruction to be given?" Trial counsel responded:

> "The one thing I can remember from the trial, I remember arguing for the self-defense instruction. I remember when I requested it, [the court] making a comment something to the effect of what was your client doing bringing a gun to a fist fight and the people in the gallery kind of reacting; somebody who was family or friends of the victim saying that is right. I don't recall if he changed his mind, I thought he did not allow us to give the self-defense because it was a firearm used when [the victim] did not have any weapon."

¶ 16    On September 28, 2011, trial court denied the petition. Defendant appealed, arguing that Nikitas provided unreasonable assistance in neglecting to argue that trial counsel was ineffective for failing to object to particular testimony and specific comments by the State during closing argument. Further, he argued that appellate counsel was ineffective for not raising trial counsel's ineffectiveness. We affirmed the denial of defendant's petition, holding that Nikitas was not unreasonable, because the omitted claims would have failed. See *People v. Wester*, 2013 IL App (2d) 111085-U, ¶ 34.

¶ 17    On January 10, 2014, defendant filed a *pro se* petition under section 2-1401 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)). Defendant argued that his conviction was void because the trial court lacked the power to convict him where (1) the State fraudulently concealed evidence during his trial and (2) the court allowed the jury to receive fraudulent instructions. The trial court denied the petition, and we affirmed. *People v. Wester*, 2015 IL App (2d) 140732-U.

¶ 18    In December 2014, defendant filed a *pro se* motion for leave to file a first successive postconviction petition. He claimed that trial counsel was ineffective in his suggested answer to a jury question during deliberations. The trial court denied leave to file, finding that defendant could not establish cause or prejudice. We affirmed. *People v. Wester*, 2018 IL App (2d) 150768-U. We noted that defendant raised the issue in his initial postconviction petition and that trial counsel testified to it at the evidentiary hearing. *Id.* ¶ 30. We held, *inter alia*, that even if the trial court did not specifically rule on the issue in the postconviction proceeding, defendant forfeited the issue by failing to secure a ruling. *Id.* ¶ 30.

¶ 19    On January 16, 2019, defendant, *pro se*, sought leave to file a second successive postconviction petition. He claimed that the trial court committed reversible error in failing to properly instruct the jury on the definition of "knowingly" and that trial counsel was ineffective for neglecting to raise the issue. He further argued that "because the court instructed the jury on IPI Crim No. 24-25.06, justifiable use of force, the court was required by law to give the jurors an instruction on IPI Crim Nos. 7.05 and 7.06, which covers second degree murder based on an unreasonable belief of justification." He also argued that trial counsel should have submitted a jury instruction for second-degree murder and that he based his decision to forgo that instruction on trial counsel's faulty advice. Finally, pointing to trial counsel's testimony at the evidentiary hearing, defendant claimed:

> "How could it be said that [defendant] received a fair trial and due process when the attorney representing him did not know that the defense was justifiable use of force? [Trial counsel's] performance at trial was highly prejudicial because he testified that he prepared [defendant's] case based on the judge not having allowed a self-defense instruction."

He argued that appellate counsel and Nikitas were ineffective in failing to argue trial counsel's ineffectiveness. He also claimed that Nikitas failed to comply with Rule 651(c).

¶ 20    On February 1, 2019, the trial court denied defendant's motion for leave to file his second successive postconviction petition, finding that defendant failed to establish cause and prejudice. On February 19, 2019, defendant filed a *pro se* "Amended Petition Requesting Leave to File a Successive Post Conviction Petition." On February 28, 2019, defendant filed a motion for reconsideration of the trial court's February 1, 2019, denial of leave to file his second successive postconviction petition.

¶ 21    On March 5, 2019, the trial court denied defendant's motion for reconsideration. The court also denied defendant's motion for leave to file a successive postconviction petition. The court characterized that proposed petition as a third successive postconviction petition and, deeming it frivolous, imposed a $90 sanction. See 735 ILCS 5/22-105(b) (West 2018). Following the denial of his motion to reconsider the imposition of sanctions, defendant appealed. Because defendant wished to represent himself on appeal, we granted OSAD's motion to withdraw.

¶ 22    We affirmed. *People v. Wester*, 2020 IL App (2d) 190415-U. We noted that, in our 2018 decision, we rejected defendant's claims regarding "trial counsel's response to the jury's questions, the adequacy of the instructions it received, and/or the manner in which those claims were raised in prior appeals." *Id.* ¶ 21 (citing *Wester*, 2018 IL App (2d) 150768-U, ¶¶ 27-35). We characterized defendant's arguments as "slightly different iterations" of those previously considered and rejected contentions. *Id.* We found that defendant's arguments were barred by *res judicata*. Moreover, defendant could not establish that he was prejudiced by any allegedly faulty advice by trial counsel, because, as we noted on direct appeal, a second-degree murder instruction would not have changed the outcome. *Id.* ¶ 23.

¶ 23     On June 2, 2021, defendant filed a *pro se* motion for leave to file a fourth successive postconviction petition under Act. In it, defendant made two main claims. First, he claimed that "the [jury] instructions given in this case constituted plain error." Defendant claimed that the instructions were "sporadic, confusing and misleading since[ ] [the] jurors did not receive a single instruction covering all of the issues in the case." He contended that the trial court should have given the definition of self-defense immediately after the definition of the offense. By not doing so, the trial court "create[d] a serious risk that jurors did not understand that in order to convict defendant of first[-]degree murder, the State must prove beyond a reasonable doubt that defendant did not have a reasonable subjective belief that his use of force was necessary." Defendant also challenged the jury instruction on Blanchard's prior conviction. The instruction stated that the jury was to determine if Blanchard was convicted of reckless discharge and, if so, to consider that prior conviction in deciding whether the State proved beyond a reasonable doubt that defendant was not justified in using the force he used. Defendant claimed that this instruction was confusing. On the matter of procedural default, defendant argued that "[t]he statutory bar of waiver *** should be relaxed since[ ] the failure to raise this matter during the original post[-]conviction proceedings is due to appellate counsel's failure to raise the issue [on] direct appeal." According to defendant, the "errors were obvious from the record and clearly stronger than those issues [that were] raised."

¶ 24     Second, defendant claimed that trial counsel was ineffective regarding the self-defense theory at trial. Defendant pointed to trial counsel's faulty memory at the evidentiary hearing as to whether the trial court allowed defendant to assert self-defense. Defendant argued: "Trial counsel's perspective that the court did not allow the self-defense instruction was highly prejudicial to the outcome of this case because it deprived the defendant [of] the ample opportunity to meet the case of the prosecution." Specifically, trial counsel's misapprehension would have "impeded his duty

to conduct a reasonably substantial investigation into that line of defense." Also, trial counsel's admission at the evidentiary hearing that he did not review the jury instructions word-for-word showed that he "failed to adequately advise defendant concerning the relevant law pertaining to self-defense." As to this claim, too, defendant argued that the statutory bar of waiver should be relaxed because "he has adequately alleged facts demonstrating he received ineffective assistance of counsel during trial as well as the direct appeal, [and thus] he has shown both cause and prejudice." Defendant also claimed that review was warranted under the "plain error rule."

¶ 25    On June 16, 2021, the trial court denied defendant leave to file the fourth successive petition. On July 9, 2021, defendant filed a motion for reconsideration. The trial court denied the motion on July 21, 2021.

¶ 26    Defendant timely appealed, and the trial court appointed OSAD.

¶ 27                                    II. ANALYSIS

¶ 28    Per *People v. Finley*, 481 U.S. 551 (1987), *People v. Kuehner*, 2015 IL 117695, ¶¶ 15, 21, and *People v. Meeks*, 2016 IL App (2d) 140509, ¶¶ 8-9, the appellate defendant moves to withdraw as counsel. In his motion, counsel states that he read the record and found no issue of arguable merit. Counsel further states that he advised defendant of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts, one potential issue for appeal, and argument why that issue lacks arguable merit. We advised defendant that he had 30 days to respond to the motion. Defendant filed a timely response.

¶ 29    Counsel suggests that the only issue defendant could raise on appeal is whether the trial court erred by denying him leave to file his fourth[1] successive postconviction petition. Counsel

---

[1]Counsel incorrectly refers to the present petition as defendant's third successive

discusses individually whether defendant made a *prima facie* showing of cause and prejudice for (1) his claim concerning the presentation of the jury instructions; (2) his claim that the instruction on Blanchard's prior conviction for reckless discharge of a firearm was confusing and denied him a fair trial; and (3) his claim that trial counsel was ineffective for failing to properly investigate a self-defense theory and by failing to properly advise him on the law of self-defense for jury-instruction purposes. Counsel argues that the issues lack arguable merit, and we agree.

¶ 30     The Post-Conviction Hearing Act (725 ILCS 5/122-1 (West 2020)) provides an avenue by which a defendant can claim that his conviction or sentence was based on a substantial denial of his constitutional rights. *People v. Boykins*, 2017 IL 121365, ¶ 9. Successive postconviction petitions are highly disfavored (*People v. Bailey*, 2017 IL 121450, ¶ 39), and "[o]nly one petition may be filed *** without leave of the court" (725 ILCS 5/122-1(f) (West 2020)). Leave of court may be granted if the defendant makes a *prima facie* showing of (1) "cause" for failing to bring the claim in his original postconviction petition and (2) "prejudice" resulting from that failure. *Bailey*, 2017 IL 121450, ¶ 39; 725 ILCS 5/122-1(f) (West 2020)). To establish "cause," the defendant must show that some objective factor external to the defense impeded his ability to raise the claim in an earlier proceeding. *People v. Davis*, 2014 IL 115595, ¶ 14. To establish "prejudice," the defendant must show that the claimed constitutional error so infected his trial that the resulting conviction or sentence violated due process. *Id.* Defendant must satisfy both prongs of this test to

---

postconviction petition. However, as noted, on March 5, 2019, the trial court characterized defendant's "Amended Petition Requesting Leave to File a Successive Post Conviction Petition," as a request for leave to file a third successive petition. Thus, defendant's present petition is actually his fourth.

obtain leave to file his successive postconviction petition. *People v. Guerrero*, 2012 IL 112020, ¶ 15. A defendant may also obtain leave to file a successive petition by raising "a claim of actual innocence to prevent a fundamental miscarriage of justice." *Coleman*, 2013 IL 113307, ¶ 83. "[T]o succeed on a claim of actual innocence, the defendant must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial." *Id.* ¶ 96. We review *de novo* the denial of leave to file. *People v. Robinson*, 2020 IL 123849, ¶ 39.

¶ 31    We agree with counsel that it is not arguable that defendant established cause for failing to include his jury-instruction claims in his initial petition. Nothing suggests the existence of an objective, external factor that impeded defendant's ability to raise those claims earlier. In his motion for leave to file his fourth successive petition, defendant argued that he established cause because (1) the jury-instruction issues rise to the level of plain error, (2) defense counsel was ineffective for failing to raise the issues at trial, and (3) appellate counsel was ineffective for failing to raise the issues on direct appeal. However, none of these arguments establish cause. The facts underlying the jury-instruction issues were part of the record on direct appeal and, therefore, those issues could have been raised in that appeal. Thus, defendant could have alleged in his initial postconviction petition that appellate counsel was ineffective for failing to raise the jury-instruction issues on direct appeal—either as plain error or by alleging trial counsel's ineffectiveness for failing to object to the instructions—but defendant did not do so. (Indeed, defendant did allege ineffective assistance of appellate counsel in his initial petition, but on a different basis.) We note that postconviction counsel was not the same counsel who represented defendant on appeal. See *People v. Flores*, 153 Ill. 2d 264 (1992) (a defendant can claim cause for filing a successive petition where he had the same counsel for the original petition as on direct appeal because counsel cannot be expected to argue his own ineffectiveness). Accordingly, as

defendant cannot establish cause for his failure to raise his jury-instruction claims earlier, it would be frivolous to argue that denial of leave to file these claims was error. Thus, we need not consider the issue of prejudice. See *People v. Brown*, 225 Ill. 2d 188, 207 (2007) (if one prong of the cause-and-prejudice test has not been established, the other prong need not be considered).

¶ 32    Counsel also suggests that it is not arguable that defendant established cause and prejudice for his claim that trial counsel provided ineffective assistance by failing (1) to properly investigate a self-defense theory or (2) adequately advise defendant about the law on self-defense. As to the first ineffectiveness claim, counsel suggests that defendant cannot establish prejudice. As to the second claim, counsel suggests that it is barred by *res judicata*. Counsel's arguments aside, it is clear that both claims fail for lack of cause.

¶ 33    Defendant's ineffectiveness claims rest on trial counsel's testimony at the evidentiary hearing on defendant's initial postconviction petition. Defendant points to trial counsel's erroneous recollection that the trial court did not allow a self-defense instruction. However, the evidentiary hearing took place on September 17, 2010. Since that time, defendant sought leave to file three successive petitions before seeking leave to file the fourth successive petition now at issue. When defendant sought leave to file his second successive postconviction petition, he asserted trial counsel's ineffectiveness based on counsel's testimony at the evidentiary hearing. Defendant's current ineffectiveness claims are also based on trial counsel's testimony. Defendant does not explain why he did not assert those claims in his proposed second successive petition or any other prior proposed successive petition. Therefore, he has not established cause for bringing those claims now. See *Davis*, 2014 IL 115595, ¶ 56 (affirming the denial of leave to file the defendant's fifth postconviction petition based on the defendant's failure to establish "cause" where the

defendant failed to "raise this or a similar claim in *any* of his earlier postconviction proceedings" (emphasis added)).

¶ 34    Counsel also suggests that it would be frivolous to argue that defendant's fourth successive postconviction petition made an actual-innocence claim such that defendant was not required to establish cause and prejudice. We agree.

¶ 35    In his response to counsel's motion to withdraw, defendant cites *People v. Pitsonbarger*, 205 Ill. 2d 44, 459 (2002), and argues that review is warranted because he has shown "that a fundamental miscarriage of justice occurred at trial which concerns his presumption of innocence." However, a defendant can demonstrate a fundamental miscarriage of justice only by showing actual innocence. *People v. Edwards*, 2012 IL 111711, ¶ 23. Our supreme court recently stated:

> "[A] postconviction petitioner seeking to file a claim of actual innocence is held to a high standard. The petitioner must produce newly discovered evidence that was unavailable at the time of trial and could not have been discovered employing due diligence. Also, this new evidence must be of such a conclusive character that it persuasively shows that the petitioner is factually innocent of the crimes for which he was convicted and that the evidence, if presented at trial, would exonerate the petitioner." *People v. Taliani*, 2021 IL 125891, ¶ 68.

As counsel notes, defendant based his claim—that trial counsel's ineffectiveness and the allegedly deficient jury instructions denied him a fair trial—on facts known at the time of trial. Although defendant claims in his response that he need not present newly discovered evidence to establish actual innocence, he is incorrect. Thus, it would be frivolous to argue that defendant raised an actual-innocence claim that warranted leave to file his successive petition.

¶ 36                                III. CONCLUSION

¶ 37    After examining the record, the motion to withdraw, the memorandum of law, and defendant's response, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of Lake County.

¶ 38    Affirmed.